MICHAEL HAMPTON SONNER, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 26485

April 2, 1998                                      955 P.2d 673

---

*Steven G. McGuire,* State Public Defender, and *James P. Logan,* Appellate Deputy State Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Belinda Quilici,* District Attorney, and *David K. Neidert,* Assistant District Attorney, Pershing County, for Respondent.

## OPINION ON REHEARING

*Per Curiam:*

Appellant Michael Hampton Sonner was convicted of first-degree murder and other offenses and sentenced to death. This court affirmed his judgment of conviction and sentence. Sonner v. State, 112 Nev. 1328, 930 P.2d 707 (1996). Sonner seeks rehearing on a number of issues. We conclude that rehearing is warranted in part, but we reaffirm Sonner's judgment of conviction and sentence.

### FACTS

On the evening of November 30, 1993, Sonner pumped $22.00 worth of gasoline into his vehicle at a truck stop on Interstate 80 twenty-three miles west of Lovelock and drove away without paying. Sonner shot Nevada State Highway Patrol Trooper Carlos Borland to death after Borland stopped Sonner's vehicle near Lovelock.

Sonner was tried in September 1994. The jury found him guilty of one count each of first-degree murder with use of a deadly weapon, ex-felon in possession of a firearm, possession of a stolen vehicle, and resisting a public officer. At the penalty hearing, the state presented evidence that Sonner had been convicted of robbery and assault with a deadly weapon on a peace officer in North Carolina, was a fugitive from North Carolina,

had robbed and raped a woman in Virginia, and had shot to death two people in Texas. His presentence report showed that he had eleven prior felony convictions.

The jury found that the murder was committed under five aggravating circumstances: Sonner was under sentence of imprisonment; Sonner had previously been convicted of two felonies involving the use or threat of violence (each prior conviction was listed as a separate aggravating circumstance); the murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody; and the victim was a peace officer, which Sonner knew or reasonably should have known, killed while engaged in the performance of his official duty. The jury found four mitigating circumstances: the murder was committed while Sonner was under the influence of extreme mental or emotional disturbance; he was subject to neglect as a child; he was subject to abuse as a child; and he had never denied culpability for his criminal conduct. The jury returned a sentence of death. The district court also adjudicated Sonner a habitual criminal.

On October 28, 1994, the district court entered a judgment of conviction and sentenced Sonner to death for the murder, a consecutive prison term of six years for ex-felon in possession of a firearm, a consecutive term of life in prison without possibility of parole for possession of a stolen vehicle and habitual criminality, and a consecutive prison term of six years for resisting a public officer.

## DISCUSSION

NRAP 40(a) requires a petition for rehearing to "state with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended." "Matters presented in the briefs and oral arguments may not be reargued in the petition for rehearing, and no point may be raised for the first time on rehearing." NRAP 40(c)(1). This court may consider a rehearing if "it appears that the court has overlooked or misapprehended a material matter in the record or otherwise" or in "such other circumstances as will promote substantial justice." NRAP 40(c)(2).

### Appeal of the nonmurder counts

In footnote one of our prior opinion in this case, we concluded that Sonner failed to address on appeal the counts of ex-felon in possession of a firearm, possession of a stolen vehicle, and resisting a public officer and had therefore abandoned any issues on appeal relating to these counts. *Sonner,* 112 Nev. at 1332 n.1, 930 P.2d at 710 n.1. In his petition for rehearing, Sonner points

out that several of his claims on appeal applied to the lesser counts as well as the murder count, e.g., the denial of his motion for change of venue and alleged prosecutorial misconduct. The state concedes that some of the claims applied to all the counts. We consequently retract the conclusion reached in footnote one of *Sonner.* Nevertheless, we reiterate that none of Sonner's claims relevant to the nonmurder counts have merit.

*Jury instruction on the authority of the Pardons Board to modify sentences*

During the penalty phase, the jury was instructed:

> Life imprisonment with the possibility of parole is a sentence to life imprisonment which provides that the defendant would be eligible for parole after a period of 10 years. This does not mean that he would be paroled after ten years but only that he would be eligible after that period of time.[1]

> Life imprisonment without the possibility of parole means exactly what it says, that the defendant shall not be eligible for parole.

> If you sentence the defendant to death you must assume that the sentence will be carried out.

> Although under certain circumstances and conditions the State Board of Pardons Commissioners has the power to modify sentences, you are instructed that you may not speculate as to whether the sentence you impose may or may not be changed at a later date.

*Sonner,* 112 Nev. at 1333 n.2, 930 P.2d at 711 n.2. This instruction was first set forth in Petrocelli v. State, 101 Nev. 46, 56, 692 P.2d 503, 511 (1985).

Sonner contends that in his case the *Petrocelli* instruction implied that if he received a sentence of life imprisonment without possibility of parole, it could be modified to a life sentence with the possibility of parole. He argues that this was misleading because NRS 213.1099(4) prevents him from receiving parole even if he received a sentence of life imprisonment without possibility of parole and it was modified to a life sentence with

---

[1]The penalties for first-degree murder were amended in 1995 so this instruction is no longer correct for offenses committed on or after July 1, 1995. *See* 1995 Nev. Stat., ch. 443, § 44, at 1181-82, and § 393, at 1340. NRS 200.030(4) now provides that first-degree murder is punishable by death, life in prison without possibility of parole, life in prison with the possibility of parole after serving a minimum of twenty years, or fifty years in prison with eligibility for parole after serving a minimum of twenty years.

the possibility of parole. Our prior opinion did not address NRS 213.1099(4).[2] Sonner therefore asserts that the court misapprehended a material point of law.

Sonner bases this assertion on Geary v. State, 112 Nev. 1434, 1439-44, 930 P.2d 719, 723-26 (1996), *reh'g granted on other grounds*, 114 Nev. 100, 952 P.2d 431 (1998). In *Geary*, we vacated a death sentence, concluding that "under the unique circumstances of this case" the *Petrocelli* instruction was unconstitutional. *Id.* at 1440-41, 930 P.2d at 724. The circumstances which rendered the instruction prejudicial in *Geary* are not present in Sonner's case. In *Geary*, "even though Geary could not qualify for parole, counsel for both sides based their arguments on a presumption that he *could* qualify for parole." *Id.* at 1442, 930 P.2d at 724. Further, Geary had previously received a sentence of life without possibility of parole, the State Board of Pardons Commissioners (Pardons Board) had commuted that sentence to a life term with the possibility of parole, and Geary had in fact been released on parole. *Id.*, 930 P.2d at 724-25. "Because these facts were so heavily emphasized before the jury, the jury may have speculated that a sentence of death was the only way to prevent Geary's eventual release from prison." *Id.*, 930 P.2d at 725. Finally, in closing argument the prosecutor emphasized Geary's future dangerousness in asking the jury to impose the death penalty. *Id.* at 1442-43, 930 P.2d at 725.

The facts in this case contrast with those in *Geary:* neither the prosecutor nor defense counsel assumed or implied that Sonner would ever be eligible for parole if sentenced to life in prison without possibility of parole; the jury did not hear any evidence that Sonner had ever gained parole after receiving a sentence of life without possibility of parole; and the prosecutor did not argue to the jury that Sonner posed a future danger. Given these factual

---

[2]NRS 213.1099(4) provides:

Except as otherwise provided in NRS 213.1215, the [State Board of Parole Commissioners] may not release on parole a prisoner whose sentence to death or to life without possibility of parole has been commuted to a lesser penalty unless it finds that the prisoner has served at least 20 consecutive years in the state prison, is not under an order to be detained to answer for a crime or violation of parole or probation in another jurisdiction, and that he does not have a history of:

(a) Recent misconduct in the institution, and that he has been recommended for parole by the director of the department of prisons;

(b) Repetitive criminal conduct;

(c) Criminal conduct related to the use of alcohol or drugs;

(d) Repetitive sexual deviance, violence or aggression; or

(e) Failure in parole, probation, work release or similar programs.

The statute has been amended slightly since Sonner's sentencing, but in substance read the same at that time. 1995 Nev. Stat., ch. 443, § 234, at 1259, and ch. 584, § 9, at 2071.

distinctions, we conclude that our holding in *Geary* does not apply here and that the *Petrocelli* instruction did not mislead the jury and prejudice Sonner.

Sonner also cites a recent decision by the Ninth Circuit Court of Appeals, Gallego v. McDaniel, 124 F.3d 1065, 1074-76, 1079 (9th Cir. 1997). In that case, a sentencing jury in Nevada was specifically instructed "that executive clemency might be available to Gallego if the jury decided to sentence him to life without the possibility of parole." *Id.* at 1074. The jury was also told that "[e]xecutive clemency involves a decision . . . to commute or reduce a defendant's sentence from life without possibility of parole to life with possibility of parole." The instructions inadequately stated the law because, when sentenced in Nevada, Gallego was under sentence of death in California and NRS 213.1099(4) made it unlikely that he would ever receive parole. *Id.* at 1076. The Court of Appeals concluded that Gallego must be resentenced. *Id.* at 1079.

The jurors who sentenced Sonner did not receive the executive clemency instructions deemed misleading in *Gallego*. Rather, they were instructed that life imprisonment without possibility of parole "means exactly what it says, that the defendant shall not be eligible for parole" and that they were not to "speculate as to whether the sentence you impose may or may not be changed at a later date."

*Geary* and *Gallego* both cite Simmons v. South Carolina, 512 U.S. 154 (1994), in which a majority of the United States Supreme Court concluded—in a plurality opinion and a concurring opinion—that where the prosecution argued future dangerousness, a state could not preclude a jury from considering parole if such preclusion presented the jury with a false choice between sentencing a person to death or sentencing him to a limited period of incarceration.[3] We conclude that *Simmons* is inapposite to Sonner's case because the prosecutor did not argue future dangerousness and the jury was not presented with a false choice between a death sentence or a limited term of incarceration.

We conclude that the *Petrocelli* instruction did not mislead the jury and did not prejudice Sonner.

*Revising the Petrocelli instruction*

In regard to offenses committed on or after July 1, 1995, the Pardons Board no longer has the power to commute a sentence of

---

[3]The Supreme Court has concluded that *Simmons* announced a new rule and does not apply retroactively in federal habeas proceedings. O'Dell v. Netherland, 521 U.S. 151, 117 S. Ct. 1969 (1997)

death or of life imprisonment without possibility of parole to a sentence allowing parole. *See* Nev. Const. art. 5, § 14(2); NRS 213.085; Miller v. Warden, 112 Nev. 930, 921 P.2d 882 (1996); California Dept. of Corrections v. Morales, 514 U.S. 499, 505 (1995). Given this definite limit on the Pardons Board's power and the possibility that a jury can occasionally be misled in circumstances like those in *Geary,* we conclude that it is best to eliminate all language in the *Petrocelli* instruction which discusses modification of sentences by the Pardons Board. Therefore, we direct the district courts to no longer give the final paragraph of the *Petrocelli* instruction to juries in capital penalty phases.

Henceforth, unless and until statutory amendment requires otherwise, when a defendant is charged with murder and the death penalty is sought, district courts are to give the following jury instruction explaining possible penalties.

> A prison term of fifty years with eligibility for parole beginning when a minimum of twenty years has been served does not mean that the defendant would be paroled after twenty years but only that he or she would be eligible for parole after that period of time.
>
> Life imprisonment with the possibility of parole is a sentence to life imprisonment which provides that the defendant would be eligible for parole after a period of twenty years. This does not mean that he or she would be paroled after twenty years but only that he or she would be eligible for parole after that period of time.[4]
>
> Life imprisonment without the possibility of parole means exactly what it says, that the defendant shall not be eligible for parole.
>
> If you sentence the defendant to death, you must assume that the sentence will be carried out.

## Other issues raised in the petition for rehearing

Sonner claims that the jury instructions unconstitutionally failed to instruct the jury to find each aggravating circumstance unanimously and that the jury instruction on reasonable doubt was improper. Sonner improperly raises these issues for the first time in his petition for rehearing. NRAP 40(c)(1). We also conclude that these claims lack merit; therefore, their consideration on rehearing would not promote substantial justice. NRAP 40(c)(2). Sonner also contends that this court overlooked prece-

---

[4]These first two paragraphs do not apply to murders committed before July 1, 1995. See footnote one above.

dent in determining that the district judge did not err when he refused to recuse himself. We conclude that Sonner has failed to show that this court misapprehended a material matter in deciding this issue. *Id.*

## CONCLUSION

The jury instruction on the power of the Pardons Board to modify sentences did not mislead the jury or prejudice Sonner. We therefore deny rehearing on this issue.

Rehearing is warranted in two matters. First, contrary to our statement in *Sonner,* we recognize that Sonner did not abandon certain issues on appeal relating to the nonmurder counts of his conviction; nevertheless, none of Sonner's claims relevant to the nonmurder counts have merit. Second, in light of NRS 213.085, we direct the district courts to no longer instruct juries on the matter of sentence modification by the Pardons Board. In all other respects, rehearing is denied, and we reaffirm Sonner's judgment of conviction and sentence.[5]

---

[5]On February 24, 1997, September 17, 1997, and February 20, 1998, Sonner filed motions to supplement his petition for rehearing. Cause appearing, we grant Sonner's motions.