MARLO THOMAS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 40248

February 10, 2004                                        83 P.3d 818

---

*David M. Schieck,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, and *Clark A. Peterson,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

In April 1996, appellant Marlo Thomas robbed a manager and killed two employees at a restaurant where he formerly worked. He was convicted of two counts of first-degree murder and four other felonies and received two sentences of death. Thomas appealed, and this court affirmed his conviction and sentence.[1] He filed a post-conviction petition for a writ of habeas corpus, and the district court denied the petition. He appeals. We conclude that Thomas's counsel were ineffective in failing to object to an incorrect instruction on sentence commutation at the penalty phase of his trial and that a new penalty hearing is required.

### FACTS[2]

At about 7:30 a.m. on April 15, 1996, Thomas drove with his wife Angela and Angela's fifteen-year-old brother, Kenya Hall, to the Lone Star Steakhouse in Las Vegas. The month before, Thomas had lost his job as a dishwasher at the restaurant. Angela waited in the car while Thomas and Hall went to the back door. Stephen Hemmes, a Lone Star employee, was leaving and spoke briefly with Thomas. Thomas then knocked on the back door, and another employee, Matthew Gianakis, let him and Hall enter. Thomas and Hall went to the office of the manager, Vincent Oddo. Thomas pulled out a .32-caliber revolver, pointed it at Oddo, and ordered him to open the safe and give them money. Thomas handed the gun to Hall and told him to take the money from Oddo. Hall remained in the office, took two or three bags of money from Oddo, and allowed Oddo to run out of the building. Hall then returned to the car.

---

[1]*Thomas v. State,* 114 Nev. 1127, 967 P.2d 1111 (1998).

[2]*See id.* at 1132-36, 967 P.2d at 1115-17.

Thomas left the office, obtained a meat-carving knife, and sought out the two employees who were at the restaurant that morning, Gianakis and Carl Dixon. Thomas stabbed Dixon to death in the bathroom. He then chased Gianakis down and stabbed him twice. Gianakis staggered to a gas station next door before dying. After returning to the car and learning that Oddo had escaped, Thomas told Hall "you're not supposed to leave witnesses."

Thomas, Hall, and Angela returned to the house in Las Vegas where they were staying, the home of Thomas's aunt, Emma Nash, and cousin, Barbara Smith. Thomas told Nash and Smith that if anyone asked they should say that they had not seen him. Smith noticed that Thomas's clothes and shoes were bloody. Thomas told Smith that he had to get rid of two people and gave her $1,000 to give to his mother. He gave the .32-caliber revolver to Nash. He then changed clothing and took his bloody clothes and shoes and the knife used in the murders to the desert behind the house. The police later recovered the items, and the blood on the clothes was determined to be consistent with Dixon's.

Thomas, Hall, and Angela drove home to Hawthorne, where they were soon arrested. In a videotaped statement, Thomas admitted to police that he had killed the two men but claimed that he had acted in self-defense. He and Hall were charged with two counts of murder with use of a deadly weapon and one count each of robbery with use of a deadly weapon, first-degree kidnapping with use of a deadly weapon, conspiracy to commit murder and/or robbery, and burglary while in possession of a firearm. Hall pleaded guilty to robbery with use of a deadly weapon and testified against Thomas at Thomas's preliminary hearing. Before Thomas's trial, however, Hall moved to withdraw his guilty plea and moved to prevent the State from calling him to testify against Thomas. In response, the State moved to use Hall's preliminary hearing testimony at Thomas's trial. The trial began in June 1997, and the district court granted Hall's motion not to testify and the State's motion to use Hall's earlier testimony.

The jury found Thomas guilty on all charges. It then returned two verdicts of death, finding no mitigating circumstances and finding the following six aggravating circumstances for each murder: Thomas had been previously convicted of a felony involving the use or threat of violence, an attempted robbery in 1990; he had been previously convicted of a felony involving the use or threat of violence, a battery causing substantial bodily harm in 1996; the murder was committed during the commission of a burglary; the murder was committed during the commission of a robbery; the murder was committed to avoid or prevent a lawful arrest; and Thomas had been convicted of more than one murder in the immediate proceed-

ing. Thomas was further sentenced to serve consecutive prison terms for the robbery, kidnapping, conspiracy, and burglary.

Thomas appealed, and this court affirmed his conviction and sentence. He filed a timely habeas petition, and the district court held an evidentiary hearing on some of his claims before denying the petition.

## DISCUSSION

As a preliminary matter, we note that Thomas's counsel did not adequately cite to the record in his briefs or provide this court with an adequate record. In support of factual assertions, counsel simply cites the supplemental habeas petition filed below. This is improper.[3] Additionally, counsel failed to include many necessary parts of the record in the Appellant's Appendix. We are able to address the merits of a number of claims only because the State provided a seven-volume appendix that includes necessary parts of the record.[4]

Thomas claims that his trial and appellate counsel were ineffective in a number of ways. These claims are properly presented because this is a timely, first post-conviction petition for a writ of habeas corpus.[5] A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review.[6] To establish ineffective assistance of counsel, a claimant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.[7] To show prejudice, the claimant must show a reasonable probability that but for

---

[3]NRAP 28(e) provides: "Every assertion in briefs regarding matters in the record shall be supported by a reference to the page of the transcript or appendix where the matter relied on is to be found." The rule also prohibits a brief to this court from incorporating by reference briefs or memoranda filed in district court.

[4]In the reply brief, Thomas's counsel states his belief that this court has the direct appeal record and chastises the State for wasting paper in its appendix. Counsel is mistaken. The clerk of this court does not retain the direct appeal record. Rather, SCR 250(7)(b) provides that the "clerk of the district court shall retain the original record . . . and shall not transmit a record on appeal to the supreme court." Appellant has the ultimate responsibility to provide this court with "portions of the record essential to determination of issues raised in appellant's appeal." NRAP 30(b)(3); *see also Greene v. State,* 96 Nev. 555, 558, 612 P.2d 686, 688 (1980); *Jacobs v. State,* 91 Nev. 155, 158, 532 P.2d 1034, 1036 (1975).

[5]*See, e.g., Feazell v. State,* 111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995).

[6]*Kirksey v. State,* 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996).

[7]*Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)).

counsel's errors the result of the trial would have been different.[8] Judicial review of a lawyer's representation is highly deferential, and a claimant must overcome the presumption that a challenged action might be considered sound strategy.[9] The constitutional right to effective assistance of counsel extends to a direct appeal.[10] To establish prejudice, the claimant must show that an omitted issue would have had a reasonable probability of success on appeal.[11]

A petitioner for post-conviction relief is entitled to an evidentiary hearing only if he supports his claims with specific factual allegations that if true would entitle him to relief.[12] The petitioner is not entitled to an evidentiary hearing if the factual allegations are belied or repelled by the record.[13] The petitioner has the burden of establishing the factual allegations in support of his petition.[14]

Thomas asserts that the district court erred in holding an evidentiary hearing on only some of his claims rather than all of them. We conclude that the court did not err in denying those claims implicating the validity of Thomas's conviction. We conclude, however, that the record shows that Thomas's counsel were ineffective in regard to the penalty phase of his trial. We therefore reverse the district court's order in part and remand for a new penalty hearing.

*Instruction regarding the power of the Pardons Board to modify sentences*

We agree with Thomas that his trial counsel should have objected to the following penalty phase instruction: "Although under certain circumstances and conditions the State Board of Pardons Commissioners has the power to modify sentences, you are instructed that you may not speculate as to whether the sentence you impose may be changed at a later date." This instruction was incorrect in regard to sentences of life in prison without possibility of parole. This court originally required the instruction in capital cases in 1985 in *Petrocelli v. State*.[15] However, we also expressly stated in *Petrocelli* that the instruction was to be used "unless and until the

---

[8]*Id.* at 988, 923 P.2d at 1107.

[9]*Strickland,* 466 U.S. at 689.

[10]*Kirksey,* 112 Nev. at 998, 923 P.2d at 1113.

[11]*Id.* at 998, 923 P.2d at 1114.

[12]*Hargrove v. State,* 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

[13]*Id.* at 503, 686 P.2d at 225.

[14]*Bejarano v. Warden,* 112 Nev. 1466, 1471, 929 P.2d 922, 925 (1996).

[15]101 Nev. 46, 56, 692 P.2d 503, 511 (1985), *modified by Sonner v. State,* 114 Nev. 321, 955 P.2d 673 (1998).

law on the subject is modified."[16] Such a modification occurred in 1995 with the enactment of NRS 213.085. Under that statute, for offenses committed on or after July 1, 1995, the Pardons Board cannot commute either a death sentence or a prison term of life without possibility of parole to a sentence allowing parole.[17] Thomas committed his crimes in April 1996, and his trial was in June 1997. Consequently, if he had received sentences of life in prison without possibility of parole, there was no circumstance or condition under which the Pardons Board would have been able to modify those sentences—contrary to the *Petrocelli* instruction. There is therefore a reasonable probability that jurors mistakenly believed that Thomas could eventually receive parole even if they returned sentences of life in prison without parole and that this belief contributed to their decision to render verdicts of death.

In *Sonner v. State,* we stated that in certain circumstances a jury could "occasionally be misled" by the *Petrocelli* instruction, but there we were referring to cases involving crimes committed before July 1, 1995, where a sentence of life in prison without possibility of parole could still be modified to one allowing parole.[18] But for cases like Thomas's, where NRS 213.085 categorically precludes commuting life in prison without possibility of parole to a sentence allowing parole, the instruction misstates the law and is always misleading. Moreover, in concluding that the defendant in *Sonner* was not prejudiced, we stressed that the prosecutor did not argue to the jury that the defendant posed a future danger.[19] Here, by contrast, the prosecution strongly emphasized the future danger that Thomas posed. Although the prosecution spoke only of Thomas's danger in a prison setting, jurors would also have considered the future danger he posed outside prison if they were concerned that a term of life in prison without parole might be modified to allow parole.

Because Thomas has established ineffectiveness of counsel in regard to this issue, a new penalty hearing is required. Consequently, most of Thomas's claims regarding the penalty phase of his trial require no discussion, but we address all of his claims relevant to the guilt phase.

*Other claims*

Thomas alleges ineffective assistance by trial counsel in regard to certain claims raised on direct appeal after trial counsel failed to preserve them. On direct appeal, this court determined that no

---

[16]*Id.*

[17]*Sonner,* 114 Nev. at 326-27, 955 P.2d at 677.

[18]*Id.* at 327, 955 P.2d at 677.

[19]*Id.* at 325, 955 P.2d at 676.

plain error existed and declined to consider the issues.[20] Thomas raises some of these issues again, arguing that if trial counsel had preserved them, full appellate review by this court would have led to relief. First, he complains that counsel did not object to victim impact evidence. He asserts that the "Nevada capital statutory scheme imposes no limits on the presentation of victim impact testimony and . . . can result in the arbitrary and capricious imposition of the death penalty." This assertion is unfounded. Victim impact evidence "must be excluded if it renders the proceeding fundamentally unfair"[21] or "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury."[22] It is also inadmissible if it is "impalpable or highly suspect."[23] Thomas does not explain how the victim impact evidence in his case was improper. Second, he claims that a number of jury instructions were erroneous. He challenges the instruction stating that premeditation "may be as instantaneous as successive thoughts of the mind." He cites *Byford v. State*,[24] where we disapproved of this instruction and set forth new instructions. However, *Byford* applies prospectively[25] and was decided in 2000, while Thomas was tried and convicted in 1997. Thomas asserts next that the instructions should have stated that if the intent to rob was not formed until after the murders, then a robbery did not occur and the felony-murder rule did not apply. But the facts here clearly showed that the intent to rob preceded the murders. Moreover, "in robbery cases it is irrelevant when the intent to steal the property is formed."[26] Thomas challenges the instruction that directed jurors to do "equal and exact justice" between him and the State, claiming that it violated his presumption of innocence. This challenge is meritless.[27] Also meritless is his challenge to the instruction that a verdict "may never be influenced by sympathy."[28] He challenges the instruction on reasonable doubt as well, but the instruction is required by statute and has been upheld by this court.[29] Finally, we reject his challenge to the instruc-

[20]*See Thomas,* 114 Nev. at 1149 n.5, 967 P.2d at 1125 n.5.

[21]*Floyd v. State,* 118 Nev. 156, 174, 42 P.3d 249, 261 (2002), *cert. denied,* 123 S. Ct. 1257 (2003).

[22]NRS 48.035(1); *Floyd,* 118 Nev. at 175, 42 P.3d at 261.

[23]*Leonard v. State,* 114 Nev. 1196, 1215, 969 P.2d 288, 300 (1998).

[24]116 Nev. 215, 233-37, 994 P.2d 700, 712-15 (2000).

[25]*Garner v. State,* 116 Nev. 770, 789, 6 P.3d 1013, 1025 (2000), *overruled on other grounds by Sharma v. State,* 118 Nev. 648, 56 P.3d 868 (2002).

[26]*Chappell v. State,* 114 Nev. 1403, 1408, 972 P.2d 838, 841 (1998).

[27]*See Leonard,* 114 Nev. at 1209, 969 P.2d at 296.

[28]*See Wesley v. State,* 112 Nev. 503, 519, 916 P.2d 793, 803-04 (1996).

[29]NRS 175.211; *Bollinger v. State,* 111 Nev. 1110, 1114-15, 901 P.2d 671, 674 (1995).

tion informing the jury that it did not need to agree unanimously on a theory of first-degree murder as long as its verdict of first-degree murder was unanimous.[30] Thomas fails to establish ineffective counsel in regard to any of these issues.

Thomas claims that his trial counsel were ineffective in response to his aunt's testimony referring to his prior time in jail. On direct appeal, Thomas argued that the district court should have granted a mistrial because of the remark.[31] We concluded that the error ''was harmless because the evidence against Thomas was overwhelming, the comment was unsolicited by the prosecutor and inadvertently made, and Thomas declined the court's offer to admonish the jury.''[32] Thomas now maintains that his trial counsel should have had the court admonish the jury. Although the district court did not allow an evidentiary hearing on this claim, it is apparent that counsel reasonably feared that an admonishment might have reinforced the effect of the aunt's statement. Further, we see no probability of a different result if an admonishment had been given.

Thomas asserts that his trial and appellate counsel should have challenged the aggravating circumstances involving robbery, burglary, and avoiding lawful arrest as improperly ''overlapping.'' This assertion has no merit. Thomas offers little analysis and cites none of our caselaw regarding duplicative aggravators.[33] We have specifically held that the use of robbery and burglary as separate aggravators is proper.[34]

Thomas claims that his trial and appellate counsel failed to challenge numerous improper remarks by the prosecutors. To determine if prejudicial prosecutorial misconduct occurred, the relevant inquiry is whether a prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process.[35] The statements should be considered in context, and ''a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.''[36] We conclude that two

---

[30]*See Evans v. State,* 113 Nev. 885, 894-96, 944 P.2d 253, 259-60 (1997).

[31]*Thomas,* 114 Nev. at 1142, 967 P.2d at 1121.

[32]*Id.*

[33]*E.g., Hernandez v. State,* ·118 Nev. 513, 529-30, 50 P.3d 1100, 1111 (2002), *cert. denied,* 537 U.S. 1197 (2003).

[34]*Homick v. State,* 108 Nev. 127, 137-38, 825 P.2d 600, 607 (1992).

[35]*Darden v. Wainwright,* 477 U.S. 168, 181 (1986).

[36]*United States v. Young,* 470 U.S. 1, 11 (1985).

of the remarks in question, made in the closing argument of the penalty phase, were improper and that counsel unreasonably failed to challenge them. We need not decide whether this failure was prejudicial since we have already determined that a new penalty hearing is necessary.

First, the prosecutor asserted, "This is not a rehabilitation hearing. There is no program that we know of that rehabilitates killers." This argument was improper. This court has held that prosecutors "may not argue facts or inferences not supported by the evidence."[37] The State has not pointed to any defense argument that justified the assertion or to any evidence that supported it. The State relies on *Collier v. State,* where this court recognized that counsel may properly "discuss general theories of penology."[38] But the prosecutor's claim here was stated as fact, not theory, and in *Collier* this court specifically concluded that the prosecutor improperly referred to facts outside the record in arguing that the defendant could not be rehabilitated.[39] Thus, trial and appellate counsel should have challenged these remarks.

Second, the prosecutor argued: "The defendant is deserving of the same sympathy and compassion and mercy that he extended to Carl Dixon and Matt Gianakis. Don't let justice be robbed in the name of mercy." Thomas cites *Lesko v. Lehman,*[40] where the Third Circuit concluded that a prosecutor who implored a jury to make a death penalty determination in the cruel and malevolent manner shown by the defendants toward their victims exceeded the bounds of permissible advocacy. The comments were "calculated to incite an unreasonable and retaliatory sentencing decision, rather than a decision based on a reasoned moral response to the evidence."[41] In *Williams v. State,*[42] this court distinguished *Lesko* and concluded that it was permissible for the prosecutor to ask the jury to show a capital defendant the same mercy that he showed his victim because the prosecutor was responding to a comment by defense counsel raising the issue of mercy. Even though Thomas's counsel did not invoke "mercy" or "sympathy" or "compassion" in closing argument, the State cites *Williams* and maintains that the

[37]*Williams v. State,* 103 Nev. 106, 110, 734 P.2d 700, 703 (1987).

[38]101 Nev. 473, 478, 705 P.2d 1126, 1129 (1985), *modified on other grounds by Howard v. State,* 106 Nev. 713, 800 P.2d 175 (1990).

[39]*Id.*

[40]925 F.2d 1527, 1545 (3d Cir. 1991).

[41]*Id.*

[42]113 Nev. 1008, 1019, 945 P.2d 438, 445 (1997), *receded from on other grounds by Byford,* 116 Nev. 215, 994 P.2d 700.

prosecutor's argument was justified because counsel said: "I would ask you to spare his life and to impose the severe punishment of imprisonment without the possibility of parole." Under the State's view, anytime a defense counsel asks the jury not to impose death—*i.e.,* in every capital penalty hearing—the State can urge the jury to treat the defendant as mercilessly as the defendant treated the victim. Our ruling in *Williams* was not this broad. The remark here was improper, and counsel should have challenged it.

Thomas claims that his trial counsel were not prepared for critical proceedings and did not conduct adequate investigation. He complains that they did not confer with him before the trial and were responsible for too many other cases. This claim remains largely conclusory and fails to demonstrate prejudice. Thomas does claim specifically that his counsel was not prepared to cross-examine Hall, Thomas's codefendant, at the preliminary examination; Thomas contends that better cross-examination would have revealed that Hall was lying and had been forced to testify. The record as a whole belies this contention.

Thomas claims that his trial counsel were ineffective because they made no opening statement and called no witnesses in the guilt phase. He states that his affidavit "attached to the Supplemental Petition spells out the witnesses that should have been called." As noted above, NRAP 28(e) prohibits a brief to this court from incorporating by reference briefs or memoranda filed in district court. Furthermore, this claim has no merit: the affidavit names only witnesses allegedly relevant to the penalty phase and fails to explain what the witnesses' testimony would have been or how it might have altered the outcome of the trial.

Thomas claims that his appellate counsel failed to file a complete record on appeal. Thomas specifies only that the record filed did not include transcripts of the hearing on his motion to dismiss his attorneys. He says that the transcripts would have substantiated his claim that he did not receive effective assistance of counsel. No prejudice is apparent, however, because this court generally declines to address claims of ineffective assistance of counsel on direct appeal.[43]

Thomas also asserts that his appellate counsel was ineffective in failing to challenge the jury instruction on implied malice, which

---

[43]*See Pellegrini v. State,* 117 Nev. 860, 883, 34 P.3d 519, 534 (2001).

stated: "Malice may be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." He contends that the instruction is erroneous because it establishes a presumption of malice and uses terms that are archaic, without rational content, and merely pejorative. This court has previously rejected these contentions.[44]

The remaining claims are procedurally barred. Thomas asserts that this court's review of capital cases is unconstitutional because our opinions are arbitrary, unprincipled, and result-oriented. He offers no cause for failing to raise this claim earlier and does not establish prejudice: the claim lacks specific supporting facts, authority, or analysis to indicate that it has any merit. He also claims that the statutory mechanism for review of capital cases is faulty because this court is not required to consider whether mitigating circumstances exist and to weigh them against aggravating circumstances. Again he provides no cause for not raising this claim earlier. He also cannot establish prejudice. NRS 177.055(2)(e)[45] requires this court to consider on direct appeal: "Whether the sentence of death is excessive, considering both the crime and the defendant." We have already held that this provision requires us to consider any mitigating evidence;[46] it also necessarily requires us to assess the weight of mitigators and aggravators. Finally, Thomas alleges that African-Americans were underrepresented on his jury and that Clark County systematically excludes African-Americans from criminal jury pools. He does not argue that his counsel were ineffective in any way, and he offers no cause for failing to raise this claim at trial or on direct appeal. Thomas also fails to articulate prejudice.[47]

## CONCLUSION

We affirm the judgment of the district court insofar as it upholds Thomas's conviction. We reverse the judgment insofar as it upholds Thomas's death sentences and remand this matter to the district court for a new penalty hearing.[48]

---

[44]See *Cordova v. State,* 116 Nev. 664, 666-67, 6 P.3d 481, 482-83 (2000); *Leonard v. State,* 117 Nev. 53, 78-79, 17 P.3d 397, 413 (2001).

[45]This provision was formerly in subsection (d) of NRS 177.055(2). *See* 2003 Nev. Stat., ch. 137, § 6, at 770.

[46]*Hollaway v. State,* 116 Nev. 732, 741-42, 6 P.3d 987, 994 (2000).

[47]See *Evans v. State,* 112 Nev. 1172, 1186, 926 P.2d 265, 274-75 (1996) (setting forth the standard for a claim of systematic exclusion).

[48]This matter was submitted for decision by the seven-justice court. THE HONORABLE MYRON E. LEAVITT, Justice, having died in office on January 9, 2004, a six-justice court decided this matter.