# IN THE SUPREME COURT OF THE STATE OF NEVADA

RYAN JOE CODDINGTON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71835

**FILED**

FEB 2 6 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK



## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon. Third Judicial District Court, Lyon County; John Schlegelmilch, Judge. Appellant Ryan Joe Coddington was sentenced to a prison term of life without the possibility of parole with an additional, consecutive prison term of 96-240 months for using a deadly weapon.[1]

Coddington appeals his conviction based on the following arguments: (1) there was insufficient evidence for a first-degree murder conviction; (2) he was denied the right to a fair trial because the courtroom bailiff was married to the prosecuting attorney; (3) during voir dire, the jurors saw Coddington enter the room cloaked in a "garb of guilt," which denied him his right to a fair trial; (4) the State committed prosecutorial misconduct during closing arguments by wrongfully shifting the burden of proof onto Coddington; (5) the district court's demeanor during Coddington's closing argument influenced the jury and denied him the right to a fair trial;

---

[1]The parties are familiar with the facts and we do not recount them further except as necessary to our disposition.

18-07360

(6) the district court abused its discretion because it failed to give a self-defense jury instruction and gave two additional inapplicable jury instructions; (7) evidence the State used against Coddington was not given to him until the third day of trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (8) the district court abused its discretion when it allowed the State to present improper, burden shifting rebuttal evidence; and (9) these errors individually and cumulatively require reversal.

*There was sufficient evidence to convict Coddington of first-degree murder*

Coddington argues that there was insufficient evidence to convict him of first-degree murder because the State lacked an eyewitness and physical evidence, and the witnesses who testified against him were biased. "The standard of review on appeal in a criminal case for sufficiency of evidence is whether the jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt by the evidence that was properly before it." *Lay v. State*, 110 Nev. 1189, 1192, 886 P.2d 448, 450 (1994). "This court will not disturb a jury verdict where there is substantial evidence to support it, and circumstantial evidence alone may support a conviction." *Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1112 (2002). To convict an individual of first-degree murder, the jury must "conclude that the defendant committed a willful, deliberate and premeditated killing. Willfulness is the intent to kill. Deliberation requires a thought process and a weighing of the consequences. Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing." *Valdez v. State*, 124 Nev. 1172, 1196, 196 P.3d 465, 481 (2008) (footnotes and internal quotation marks omitted); *see also* NRS 200.030(1)(a).

The State produced two witnesses who testified against Coddington: Toni Hardin and Patricia Baker, both of whom had

relationships with Coddington. While Coddington claims that these witnesses were biased against him, the basis of their bias was made known to the jury. Hardin testified to being present at Coddington's house in Dayton when he killed the victim. Specifically, she testified to hearing Coddington hit the victim on the side of the head with a hatchet. Hardin further testified to helping Coddington burn and dispose of the body. Baker testified that Coddington told her in detail how he murdered the victim with a hatchet and burned and disposed of her body. Additionally, the victim's head had a depressed fracture, which one of the State's experts described as consistent with being hit on the head with a hatchet. Therefore, a reasonable jury "could have been convinced of the defendant's guilt beyond a reasonable doubt by the evidence that was properly before it." *Lay*, 110 Nev. at 1192, 886 P.2d at 450.

*Coddington received a fair trial*

"A criminal defendant has a fundamental right to a fair trial secured by the United States and Nevada Constitutions." *Hightower v. State*, 123 Nev. 55, 57, 154 P.3d 639, 640 (2007) (citing to U.S. Const. amend. XIV; Nev. Const. art. 1, § 8). The United States Supreme Court has determined that "[a] fair trial in a fair tribunal is a basic requirement of due process." *Groppi v. Wisconsin*, 400 U.S. 505, 509 (1971) (internal quotation marks omitted). Coddington argues that he was denied the right to a fair trial because the courtroom bailiff was the prosecutor's wife, the jury saw Coddington enter from the secured area, the State committed prosecutorial misconduct, the district court conveyed its bias to the jurors through its demeanor, and the district court improperly instructed the jury.

*Using the prosecutor's wife as a bailiff did not deny Coddington a fair trial*

Coddington argues that the prosecutor and bailiff were married, which created the appearance of a partial tribunal. We disagree. There is no evidence to support, and Coddington does not argue, that any specific juror was aware of the fact that the bailiff was married to the prosecutor or that it influenced the jury's decision. In denying Coddington's objection, the district court noted that the bailiff would not wear identification and would be referred to "as Madame Bailiff" to avoid associating her with the prosecuting attorney. Nothing in the record demonstrates that this protocol was not followed. Therefore, using the prosecutor's wife as a bailiff did not deny Coddington a fair trial.

*Coddington's entrance during voir dire did not deny him a fair trial*

During a chamber's conference, Coddington expressed concern that his entrance during voir dire from a secured area "placed [him] in the 'garb of guilt,'" violating the presumption of innocence. "This court has recognized that a defendant has the right to appear before the jury in the clothing of an innocent person because [t]he presumption of innocence is incompatible with the garb of guilt." *Nelson v. State,* 123 Nev. 534, 545, 170 P.3d 517, 525 (2007) (alteration in original) (internal quotation marks omitted). Further, "[t]he garb of guilt necessarily includes physical restraints as such restraints, like prison clothing, erode the presumption of innocence." *Id.* In this case, there is no evidence in the record that demonstrates that the jury actually saw the area that Coddington entered from, let alone that they knew it was a jail or secured area for inmates. Additionally, Coddington was unrestrained, wearing a suit, and the district court directed the bailiff to ensure that Coddington was seated prior to the

jury entering the courtroom in the future. Therefore, Coddington's entrance did not deny him a fair trial.

### The prosecutorial misconduct did not deny Coddington a fair trial

Coddington argues that the prosecutor impermissibly shifted the burden onto the defense during closing arguments. The prosecutor's statements at issue were as follows:

> Now, the defense presented some evidence in this case. And they don't have to prove anything. The State has to prove this case. But you evaluate that evidence just as do you the State's evidence.
>
> And let's see what they gave you. Nothing about the crime, nothing about what happened in the [Dayton] house. They tell you about the hatchet.

Because Coddington failed to object to these comments at trial, we review the prosecutor's statements for plain error. *See* NRS 178.602 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *Valdez*, 124 Nev. at 1190, 196 P.3d at 477. "When considering claims of prosecutorial misconduct, this court engages in a two-step analysis. First, we must determine whether the prosecutor's conduct was improper. Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal." *Valdez*, at 1188, 196 P.3d at 476 (footnotes omitted). "To determine if prejudicial prosecutorial misconduct occurred, the relevant inquiry is whether a prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process." *Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004). Because the State has the burden of proving a defendant's guilt beyond a reasonable doubt, it is impermissible for the State to make comments that "suggest[ ] to the jury that it [i]s the defendant's burden to produce proof by explaining the

absence of witnesses or evidence." *Barron v. State*, 105 Nev. 767, 778, 783 P.2d 444, 451 (1989). Moreover, "it is generally improper for a prosecutor to comment on the defense's failure to produce evidence or call witnesses as such comment impermissibly shifts the burden of proof to the defense." *Whitney v. State*, 112 Nev. 499, 502, 915 P.2d 881, 883 (1996).

We conclude that the prosecutor's statements that Coddington gave the jury "[n]othing about the crime" and "nothing about what happened in the [Dayton] house" were improper and constituted prosecutorial misconduct because they impermissibly shifted the burden of proof to the defendant and suggested that Coddington had to produce evidence to explain the crime and crime scene. However, given the weight of evidence against Coddington, he cannot show "that the error affected his . . . substantial rights, by causing actual prejudice or a miscarriage of justice." *Valdez*, 124 Nev. at 1190, 196 P.3d at 477 (internal quotation marks omitted). Accordingly, we conclude that this individual instance of prosecutorial misconduct does not require the reversal of Coddington's conviction.

### *The district court's conduct did not deny Coddington a fair trial*

Coddington argues that "[d]uring the course of [his] closing argument, the [d]istrict [c]ourt [j]udge rolled his eyes, stared at the ceiling, and appeared frustrated, while also being dismissive of the argument focusing on what appeared to be other paperwork and his computer," and that this behavior influenced the jury's decision. Following our review of the video of closing arguments, we disagree.

"A trial judge is charged with providing order and decorum in trial proceedings. What may be innocuous conduct in some circumstances may constitute prejudicial conduct in a trial setting, and we have earlier urged judges to be mindful of the influence they wield." *Parodi v. Washoe*

SUPREME COURT
OF
NEVADA

(O) 1947A

6

*Med. Ctr., Inc.*, 111 Nev. 365, 367, 892 P.2d 588, 589 (1995) (footnote omitted). "Judicial misconduct must be preserved for appellate review; failure to object or assign misconduct will generally preclude review by this court." *Oade v. State*, 114 Nev. 619, 621-22, 960 P.2d 336, 338 (1998). However, we will review judicial misconduct on appeal for plain error because we have recognized that counsel does not always challenge a judge's behavior "for fear of antagonizing [the judge] and thereby prejudicing a client's case." *Id.* at 622, 960 P.2d at 338 (internal quotation marks omitted).

Coddington did not object during closing arguments so we apply plain error review. We do not perceive any inappropriate conduct by the district court, and there is no evidence in the record that the jury's decision was influenced by the district court's behavior. Therefore, Coddington has failed to demonstrate plain error requiring the reversal of his conviction.

*The district court did not err in instructing the jury*

The district court denied Coddington's request for a jury instruction regarding self-defense and allowed jury instructions on flight and multiple actors, despite Coddington's objections. "The district court has broad discretion to settle jury instructions and decide evidentiary issues," and thus, this court reviews the decision to give or not give a specific jury instruction for an abuse of discretion or judicial error. *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001). "This court evaluates appellate claims concerning jury instructions using a harmless error standard of review." *Barnier v. State*, 119 Nev. 129, 132, 67 P.3d 320, 322 (2003). NRS 178.598 states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

First, Coddington argues that he had the right to have the jury instructed on self-defense. We have "consistently held that the defense has

 

the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be." *Crawford v. State*, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005) (internal quotation marks omitted). However, we have declined to assign error to the district court for refusing to give a self-defense instruction where the evidence showed that the defendant "was the pursuer and aggressor." *Mirin v. State*, 93 Nev. 57, 59, 560 P.2d 145, 146 (1977). A review of the record, including Hardin's and Baker's testimony, shows that Coddington was the "pursuer and aggressor" and did not act in self-defense. Accordingly, we conclude that the district court did not err in declining to give the self-defense jury instruction.

Second, Coddington argues that his alleged flight was not from the scene of the victim's death, and Hardin testified that he had other reasons to move. The flight instruction stated,

> The flight of a person after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in light of all other proved facts in deciding the questions of guilt. Whether or not evidence of flight shows a consciousness of guilt and the significance to be attached to such a circumstance are matters for your deliberation.

"[A] district court may properly give a flight instruction if the State presents evidence of flight and the record supports the conclusion that the defendant fled with consciousness of guilt and to evade arrest." *Rosky v. State*, 121 Nev. 184, 199, 111 P.3d 690, 699-700 (2005). To support its theory of flight, the State presented testimony from an officer who searched Coddington's truck subsequent to his arrest. The officer testified that the truck was packed with personal belongings and that it looked like

Coddington was moving. Hardin testified that she felt Coddington was "running." Therefore, we conclude that the district court properly instructed the jury on flight because the State's evidence and the record demonstrate that Coddington was planning to flee "with consciousness of guilt and to evade arrest." *See id.* at 199, 111 P.3d at 700.

Third, Coddington argues that the district court abused its discretion in giving the multiple actors jury instruction because it confused the jury and because only Coddington was charged with the murder, so if the jury thought Hardin or Baker killed the victim, then Coddington had to be acquitted. The multiple actors instruction stated:

> You are here to determine the guilt or the innocence of Ryan Coddington from the evidence in the case. You are not called upon to return a verdict as to the guilt or innocence of any other person. So, if the evidence in the case convinces you beyond a reasonable doubt of the guilt of Ryan Coddington on the charged offense you should so find, even though you may believe one or more persons are also guilty.

We conclude that the district court did not err in giving the multiple actors instruction. This instruction admonished the jury to ignore anyone else's culpability in determining whether Coddington was guilty. This instruction was appropriate and necessary given the fact that Hardin and Baker were also charged with crimes relating to the victim's death and both were involved in disposing of the victim's body. *See Guy v. State*, 108 Nev. 770, 778, 839 P.2d 578, 583 (1992) (finding the same jury instruction appropriate where an accomplice participated in the crimes that led to the defendant's murder conviction).

 

*Coddington was not prejudiced when the State disclosed a photo of text messages between Baker and Coddington on the third day of trial*

During discovery, Coddington requested a photo of text messages between Coddington and Baker that was taken by an investigating officer. However, the State did not discover the photo until the third day of trial, which it then disclosed to Coddington. Coddington moved for additional discovery of all photos taken by the investigating officer on the day he took the photo of the text messages. The State expressed confusion as to what kind of motion Coddington was making and if it was one under *Brady v. Maryland*, 373 U.S. 83 (1963), but Coddington did not address the State's concern. The district court questioned the investigating officer about the number of photos he took, and the officer stated, "I believe it was one. I don't have copies. I don't -- I honestly don't know, Your Honor." The district court appeared to accept the deputy's answer and determined that "there was no material prejudice to the defendant" because the contents of the text messages in the photo were described in multiple police reports that were produced during discovery, the State did not withhold evidence from Coddington, and his ability to cross-examine witnesses was not limited by the late disclosure. Coddington moved the district court for a mistrial, which the district court denied for the same reasons.

While the district court referenced "material prejudice," which is included in the analysis under *Brady*, there was no mention of *Brady* by the district court. Further, "a true *Brady* violation occurs only when a court determines that the suppressed evidence would have produced a different verdict." *Thomas v. Eighth Judicial Dist. Court*, 133 Nev., Adv. Op. 63, 402 P.3d 619, 628 n.12 (2017) (internal quotation marks omitted). Therefore, "it is not practicable to analyze a *Brady* violation prior to entry of a verdict."

*Id.* On appeal the parties discuss this issue under *Brady*, but the dispute between the parties actually appears to be a late disclosure of evidence issue.

NRS 174.295(1) explains that if "a party discovers additional material previously requested which is subject to discovery . . . , the party shall promptly notify the other party or the other party's attorney or the court of the existence of the additional material." If a party fails to comply with the disclosure requirements, "the court may order the party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances." NRS 174.295(2). "The district court has broad discretion in fashioning a remedy under [NRS 174.295]; it does not abuse its discretion absent a showing that the State acted in bad faith or that the nondisclosure caused substantial prejudice to the defendant which was not alleviated by the court's order." *Evans v. State*, 117 Nev. 609, 638, 28 P.3d 498, 518 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 732 n.5 (2015); *see also United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976) (describing the inquiry on appeal for late disclosure of evidence as "whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial").

Coddington has failed to show that the State acted in bad faith or that he was prejudiced by receiving the photo on the third day of trial. The record demonstrates that the State gave the photo of the text messages to Coddington immediately after discovering it. Moreover, the substance and timing of the text messages were described in police reports that were

produced in discovery, which demonstrates that Coddington had the information depicted in the photo prior to trial. Notably, Coddington cross-examined Baker on the information in the text messages. Additionally, the district court gave Coddington the opportunity to recall the investigating officer for cross-examination, but Coddington chose not to do so. Therefore, we conclude that no relief is warranted for this claim.

*The district court did not abuse its discretion in allowing the State to present evidence regarding Coddington's statements about the victim's death*

During trial, Coddington presented a toxicologist who testified that deaths from methamphetamine use are not uncommon. Following the toxicologist's testimony, the State requested to recall a deputy to present rebuttal evidence. Coddington objected, arguing that the deputy's testimony would be improper rebuttal evidence because it would shift the burden onto the defense. The State indicated that the officer's testimony would show that Coddington previously stated that the victim did not overdose. The district court concluded that it was proper rebuttal evidence for the State to demonstrate that Coddington never claimed the victim overdosed. The district court further noted that if the State asked an improper question that shifted the burden, Coddington could object during the testimony. The State then recalled the deputy, who testified that during a police interview Coddington stated that the victim did not overdose. Coddington did not object to the officer's testimony. "Admission of rebuttal evidence is within the discretion of the trial court." *Lopez v. State*, 105 Nev. 68, 81, 769 P.2d 1276, 1285 (1989). "[R]ebuttal evidence [i]s that which explains, contradicts, or disproves evidence introduced by a [d]efendant during his case in chief." *Id.* (internal quotation marks omitted). Here, the district court did not abuse its discretion because the officer's testimony was

clearly rebuttal evidence from the State to contradict Coddington's testimony regarding methamphetamine death.

*There is no cumulative error requiring reversal*

"The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (internal quotation marks omitted). Because Coddington has demonstrated only one error, there is nothing to cumulate. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

cc:   Hon. John Schlegelmilch, District Judge
      Johnston Law Offices, P.C.
      Attorney General/Carson City
      Lyon County District Attorney
      Third District Court Clerk