IN THE SUPREME COURT OF THE STATE OF NEVADA

JAVON ROBINSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 76979

FILED

APR 16 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER AFFIRMING IN PART, VACATING IN PART AND REMANDING

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon, two counts of burglary with a firearm, two counts of robbery with the use of a deadly weapon, and conspiracy to commit robbery.[1] Eighth Judicial District Court, Clark County; Douglas Smith, Judge. In the span of nine days, appellant Javon Robinson burgled and robbed M.G., burgled and robbed R.B., and murdered K.C. Robinson raises several issues on appeal.

*Motion to sever charges*

First, Robinson challenges the joinder of offenses and further argues that the district court erred by denying his motion to sever. A district court's decision whether to join or sever offenses is reviewed for an abuse of discretion. *See Rimer v. State*, 131 Nev. 307, 320, 351 P.3d 697, 707 (2015).

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

20-14482

We conclude joinder was appropriate because the acts charged constituted part of a common scheme. *See* NRS 173.115(1)(b) (allowing for joinder of offenses that constitute "parts of a common scheme"). Here, all of the crimes involved using classified advertisement websites to coax the victims to meet for an innocuous purpose. At the ensuing meetings, two of the victims were robbed at gunpoint, and the third was shot to death.[2] Each of the three victims were young men who utilized classified advertisement websites to meet an otherwise unknown individual. Robinson committed the crimes over a span of nine days. The crimes all occurred in locations near Robinson's residence in Las Vegas. The "concurrence of [these] common features ... support[s] the inference that [the offenses] were committed pursuant to a common design," making joinder appropriate. *Farmer v. State*, 133 Nev. 693, 699-700, 405 P.3d 114, 120-21 (2017) (defining common scheme and explaining that the offenses are not required to be identical to be joined under NRS 173.115).

Regarding severance, we conclude Robinson has not shown undue prejudice because evidence of the individual acts would be cross-admissible to prove identity and intent. *See* NRS 174.165 (providing district courts discretion to order separate trial where it appears that a defendant will be prejudiced by a joinder of offenses); *Farmer*, 133 Nev. at 700, 405

---

[2]While the jury acquitted Robinson of the K.C. robbery charge, the factual circumstances countenanced the State's theory of robbery. *See Kansas v. Marsh*, 548 U.S. 163, 194 (2006) (Scalia, J., concurring) (recognizing that an acquittal does not mean the accused was innocent of the crime charged, only that the State failed to meet its burden of proof for that charge).

P.3d at 121 (providing that even if offenses are properly joined, the district court should order separate trials "if it appears that the defendant will be unduly prejudiced"); *see also Middleton v. State*, 114 Nev. 1089, 1108, 968 P.2d 296, 309 (1998) (explaining that the cross-admissibility of evidence indicates a lack of undue prejudice against the defendant). Specifically, M.G. and R.B. both set up meetings online with Robinson, who then robbed them. M.G. and K.C. were both contacted by a phone number later connected to Robinson before being robbed and murdered, respectively. A firearm was used and the perpetrator wore a gray or light colored hooded sweatshirt at each incident. Further, substantial evidence supports Robinson's guilt as to each offense—eye-witness testimony, physical evidence, and cell phone records. *Cf. Weber v. State*, 121 Nev. 554, 575, 119 P.3d 107, 122 (2005) (explaining that close cases are "more likely" to require reversal "because [joinder] may prevent jurors from making a reliable judgment about guilt"), *overruled on other grounds by Farmer*, 133 Nev. 693, 405 P.3d 114. Therefore, we conclude the district court did not abuse its discretion by denying Robinson's motion to sever.

*Batson challenge*

Second, Robinson argues that the State exercised a peremptory challenge in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). When considering a *Batson* challenge, the district court must engage in a three-step inquiry. *McCarty v. State*, 132 Nev. 218, 226, 371 P.3d 1002, 1007 (2016). First, the opponent of the challenge must allege sufficient facts to show a prima facie case of discrimination. *Id.* Second, if a prima facie case is shown, the proponent of the challenge must explain the non-discriminatory rationale for the strike. *Id.* Finally, after evaluating the

proponent's neutral explanation for the strike, the district court must determine if the opponent of the peremptory strike has proven purposeful discrimination. *See id.*

Here, the first step of the *Batson* analysis became moot when the State provided a race-neutral explanation before the district court determined whether Robinson made a prima facie showing of discrimination. *See Williams v. State*, 134 Nev. 687, 690-91, 429 P.3d 301, 306-07 (2018). The State set forth several non-discriminatory reasons for striking the prospective juror: her family had negative interactions with law enforcement, she was under a pain medication program, and she was an avid watcher of forensic-science-themed television shows. The district court determined that Robinson failed to prove purposeful discrimination in light of the State's neutral explanation.

Robinson argues, as he did below, that the State's reasons for striking the prospective juror were pretextual because other prospective jurors shared similar facets but were not struck. However, Robinson has not included the voir dire transcripts in the appendix. *See Thomas v. State*, 120 Nev. 37, 43 n.4, 83 P.3d 818, 822 n.4 (2004) ("Appellant has the ultimate responsibility to provide this court with 'portions of the record essential to determination of issues raised in appellant's appeal.'" (quoting NRAP 30(b)(3))); *Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate record rests on appellant."); NRAP 30(b)(1) ("Copies of all transcripts that are necessary to the . . . review of the issues presented on appeal shall be included in the appendix."). Given the incomplete record, we cannot conclude the district court erred in denying Robinson's *Batson* challenge. *See Hawkins v. State*, 127 Nev. 575, 577, 256

P.3d 965, 966 (2011) ("Appellate review of a *Batson* challenge gives deference to [t]he trial court's decision on the ultimate question of discriminatory intent." (internal quotation marks omitted)); *see also Riggins v. State*, 107 Nev. 178, 182, 808 P.2d 535, 538 (1991) ("[T]he missing portions of the record are presumed to support the district court's decision."), *rev'd on other grounds by Riggins v. Nevada*, 504 U.S. 127 (1992).

*Dying declaration*

Third, Robinson argues that the district court erred in admitting K.C.'s out-of-court statements under the dying declaration exception to the hearsay rule. *See* NRS 51.335 (providing the dying declaration exception to otherwise inadmissible hearsay). We disagree.

A district court's decision to permit hearsay testimony under the dying declaration exception is reviewed for an abuse of discretion. *See Harkins v. State*, 122 Nev. 974, 980, 143 P.3d 706, 709 (2006). For the dying declaration exception to apply, the declarant must believe death is imminent. *See id.*

Here, K.C. clearly believed death was imminent. He had sustained multiple gunshot wounds. One bullet entered his side and travelled across his chest, damaging his lungs and spine and causing internal bleeding. Witnesses testified that K.C. was pleading for help, choking on his own blood, and gasping for air, and his pulse was fading. K.C. was able to communicate information about his assailant shortly before his death. Considering these circumstances, we conclude that the district court did not abuse its discretion by admitting K.C.'s statements about his assailant. *See id.* at 978-80, 143 P.3d at 709-10 (discussing the

 

declarant's injuries and other surrounding circumstances as relevant when assessing the declarant's belief of imminent death).

*Motion for a mistrial*

Fourth, Robinson argues that the district court erred by denying his motion for a mistrial based on the State's failure to timely provide records in violation of NRS 174.235. The district court may grant a mistrial when some prejudice prevents the defendant from receiving a fair trial. *Rudin v. State*, 120 Nev. 121, 144, 86 P.3d 572, 587 (2004). However, "[t]he trial court has discretion to determine whether a mistrial is warranted, and its judgment will not be overturned absent an abuse of discretion." *Id.* at 142, 86 P.3d at 586.

Robinson contends the State failed to turn over the jail phone records of his brother before the State questioned Detective Tate Sanborn about comparing them to Robinson's jail call logs. Robinson moved for a mistrial, which was denied. Detective Sanborn discussed the records in the context of his investigation. The State did not introduce or possess a copy of the call logs. Subsequently, the State provided a copy of the call logs to Robinson after receiving them from Detective Sanborn. Thus, Robinson has not shown that he was prejudiced, or that the State violated its statutory disclosure obligation. *See* NRS 174.235(1)(c) (requiring the prosecuting attorney to disclose documents it "intends to introduce during the case in chief"). Therefore, we conclude that the district court did not abuse its discretion by denying the motion for a mistrial. *See Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) ("An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.").

*Illegal sentence*

Finally, Robinson alerts this court that his sentence for first-degree murder is illegal. Nevada law provides four possible penalties for first-degree murder, with the parole eligibility for a life sentence set at a minimum of 20 years. NRS 200.030(4). Thus, the sentence of life with the possibility of parole after *10* years imposed by the district court in this case is illegal. The illegal sentence may be corrected to increase the minimum term that Robinson must serve before being eligible for parole, because that is the only way to bring the sentence into compliance with NRS 200.030(4). *Miranda v. State*, 114 Nev. 385, 387, 956 P.2d 1377, 1378 (1998) (explaining that a district court may correct an illegal sentence by "increasing its severity . . . when necessary to bring the sentence into compliance with the pertinent statute"). However, after reviewing the record, we cannot determine what, if any, effect the illegal sentence had on the district court's decisions about the length of the sentences for the other offenses and whether to run them concurrently or consecutively. For example, the district court imposed two different sentences for the deadly weapon enhancement related to the murder conviction, and there was general uncertainty about the aggregate minimum sentence. Therefore, under the unique facts of this case, we vacate the sentences and remand to the district court for a new sentencing hearing.

On remand, the district court may increase the sentence for first-degree murder only to the extent necessary to bring the minimum-parole-eligibility term into compliance with the pertinent statute. And while the court may decrease the sentence imposed for any of the other offenses to the extent permitted by the pertinent statutes or choose to run

the sentences for some or all of the other offenses concurrently to achieve an aggregate minimum sentence that is the same or less than the original aggregate minimum sentence, the district court cannot *increase* the sentence for any of the offenses other than first-degree murder. *See Dolby v. State*, 106 Nev. 63, 65, 787 P.2d 388, 389 (1990) ("When a court is forced to vacate an unlawful sentence on one count, the court may not increase a lawful sentence on a separate count."). Accordingly, we

ORDER the judgment of conviction AFFIRMED IN PART AND VACATED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:   Chief Judge, Eighth Judicial District Court
      Eighth Judicial District Court, Dept. 8
      Coyer Law Office
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk