AVRAM NIKA, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 40238

September 16, 2004                    97 P.3d 1140

[Rehearing denied December 16, 2004]

*Glynn B. Cartledge* and *Richard F. Cornell,* Reno, for Appellant.

[26]We have considered Dettloff's other contentions on appeal and conclude that they lack merit.

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ROSE, J.:

This is an appeal from a district court order denying a post-conviction petition for a writ of habeas corpus. Appellant Avram Nika was convicted of first-degree murder and sentenced to death. He contends that the district court erred in denying his petition because, among other reasons, a proceeding ordered by this court under former SCR 250 was an inadequate forum to determine whether he had received effective assistance from trial counsel. We conclude that this contention has merit. We also conclude that the district court's summary dismissal of most of Nika's claims was improper. We therefore reverse and remand in regard to those claims. We affirm the district court's denial, following an evidentiary hearing, of Nika's claim that the State's use of a jailhouse informant was unconstitutional.

### FACTS

Nika was convicted of first-degree murder, pursuant to a jury verdict, for the shooting death of Edward Smith along Interstate 80 east of Reno in August 1994. The jury also found one aggravating circumstance: the murder had been committed at random and without apparent motive. It found no mitigating circumstances and returned a sentence of death.

While Nika's direct appeal was pending, this court invoked former SCR 250(IV)(H) and ordered a proceeding before the district court to determine whether Nika had received effective assistance from his trial counsel. The district court appointed counsel to represent Nika and held an evidentiary hearing on the matter in November 1996. The court ruled that because Nika was asserting ineffective assistance of trial counsel, he had waived any privilege

concerning confidential communications with those counsel. After the hearing, the district court concluded that Nika's trial counsel had been effective.

This court affirmed by published opinion Nika's conviction and sentence on direct appeal.[1] In a separate order filed the same day under the same docket number, we also dismissed his appeal of the district court's judgment that trial counsel had been effective.[2] Nika, represented by counsel, filed a timely post-conviction habeas petition and later a supplement to the petition. After the State moved to dismiss all but one of Nika's claims, the district court entered an order in March 2001 summarily granting the motion.

In June 2002, the district court held an evidentiary hearing on the one remaining claim: Nika's contention that the initial prosecutor in this case, David Stanton, had concealed from the defense an agreement with Nathaniel Wilson, a jailhouse informant who testified against Nika. Wilson was in the Washoe County jail along with Nika in 1994 before Nika's trial. Wilson testified at the trial that in a conversation at the jail Nika had admitted to killing Smith. Wilson was in jail at that time on one count of selling cocaine. He stated at the trial that he did not receive any deal from the prosecution in exchange for his testimony.

At the evidentiary hearing, Stanton testified that he never met with or spoke to Wilson and never made any offers to or deals with him. Stanton flatly denied speaking to District Judge Steven Kosach, who sentenced Wilson, about Wilson's case. Thomas Viloria, the actual trial prosecutor, testified that whether or not Wilson requested consideration, the State did not give him anything for his trial testimony. Viloria said that he had no knowledge as to Wilson's motives for coming forward with his information. Nika's counsel informed the district court that Wilson was unavailable to testify because he was in lockdown at a California jail. Counsel did not make an offer of proof as to what Wilson could testify to.

At the hearing, Nika also introduced transcripts of pretrial meetings with the trial court in its chambers attended by Stanton and, at times, attorneys from the Washoe County Public Defender, but not Nika. The meetings occurred in October 1994. The transcripts were sealed, and Nika did not learn of the meetings until sometime after his trial. The first meeting occurred on October 12, with both Stanton and Nika's counsel, Deputy Public Defender John Morrow, present. Stanton revealed that a witness adverse to Nika—Stanton did not yet identify the witness as Wilson—was also represented by the Public Defender. Stanton therefore concluded that

---

[1]*Nika v. State,* 113 Nev. 1424, 951 P.2d 1047 (1997), *overruled in part by Leslie v. Warden,* 118 Nev. 773, 59 P.3d 440 (2002).

[2]*Nika v. State,* Docket No. 27331 (Order Dismissing Appeal, December 30, 1997).

the Public Defender had a conflict of interest, and the district court accepted this conclusion. Morrow responded that he did not have enough facts ''to make an informed judgment,'' but eventually acquiesced to the court's decision to discharge the Public Defender from representing Nika. However, the record also indicates that just before this meeting with the court, Stanton had advised Morrow of the adverse witness and Morrow had gone to the Washoe County jail and warned Nika not to speak to other inmates because someone was informing on him.

The Public Defender was still representing Nika when more meetings occurred on October 28. Stanton met with the trial court alone and revealed that the adverse witness was Nika's fellow inmate, Wilson. Wilson was awaiting sentencing for a narcotics offense. He had approached officers at the jail in early October, saying that he had received information from Nika regarding the murder. Stanton said that he had observed an interview of Wilson on October 10,[3] where Wilson ''informed the detectives that he would like some consideration for his testimony, although no specifics were given or requested by him.'' Stanton told the court that ''we will not offer Mr. Wilson, for obvious reasons, any deal whatsoever.'' Stanton also informed the court that he had learned that Morrow had warned Nika to keep quiet, and he complained that as a result the Public Defender had impaired Wilson's interest in aiding authorities in hope of gaining leniency at his sentencing. (The district court later stated that it did not fault Morrow's action.) Stanton acknowledged that Wilson's identity and information would have to be disclosed to Nika's counsel a reasonable time before trial, but he preferred to delay the disclosure in case Wilson could gain more information from Nika. Stanton told the court that he did not ''consider [Wilson] to be an agent of the State; he has not been given directives to continue eliciting information.''

Washoe County Public Defender Michael Specchio joined the next meeting later that day. When informed about Wilson, he agreed that his office had a conflict of interest. The trial court then disqualified the Public Defender's Office as counsel for Nika, directed it to cease contact with Wilson and withdraw from representing him within ten days, and directed Specchio and Morrow not to disclose what they had learned regarding Wilson.

The following evidence was also presented to the district court regarding Nika's claim. Before approaching officers at the jail in regard to Nika, Wilson had pleaded guilty on September 29, 1994, to unlawful sale of a controlled substance, pursuant to a plea agreement requiring the State to concur with the recommendation of the Division of Parole and Probation, even if it should include proba-

---

[3]The record reflects that the correct date is October 11, 1994.

tion. The Division recommended a suspended sentence of five years in prison and probation. Wilson was then sentenced in November 1994, more than seven months before Nika's trial in June 1995. Stanton was present at the sentencing but did not participate. The Public Defender withdrew from representing Wilson, who then proceeded in proper person. Pursuant to the plea agreement, the prosecutor concurred with the Division's recommendation, and the sentencing court followed the recommendation.

The district court entered an order on November 26, 2002, denying Nika's habeas petition. The court found that the State had not made any agreement with Wilson nor withheld any other evidence favorable to the defense in regard to Wilson. It also found that Nika failed to demonstrate prejudice: even if Wilson initially came forward with information against Nika in the hope of gaining some benefit and the jury had been informed of this hope, there was no reasonable probability of a different result in Nika's trial.

## DISCUSSION

### I. The summary dismissal of all but one of appellant's habeas claims

In March 2001, the district court entered an order summarily granting the State's motion to dismiss all of Nika's post-conviction habeas claims except his claim that the prosecution had concealed an agreement with Wilson to gain his testimony against Nika. In its motion, the State asserted: "Some [of Nika's claims] are based on theories which have been rejected as a matter of law by dispositive authorities. Others are factually unsound. Still others are procedurally barred." The district court's order contained no specific findings of fact or conclusions of law supporting its dismissal of the claims. After the evidentiary hearing on the remaining claim, the court entered an order in November 2002 rejecting that claim and denying Nika's habeas petition. This second order also contained no factual findings or legal conclusions in regard to the claims dismissed earlier.

NRS 34.830(1) provides: "Any order that finally disposes of a petition, whether or not an evidentiary hearing was held, must contain specific findings of fact and conclusions of law supporting the decision of the court." Consequently, the orders here were deficient, leaving this court unable to determine the basis for the district court's decision. We therefore reverse its dismissal of these claims and remand.

[Headnote 2]

It is possible that dismissal of some of the claims, if properly explained, could be upheld. However, we conclude that one conclu-

sion that the district court may have reached is not a proper basis for dismissal. NRS 34.810(1)(b) pertinently provides that a court must dismiss a petition if:

> The petitioner's conviction was the result of a trial and the grounds for the petition could have been:
> (1) Presented to the trial court;
> (2) Raised in a direct appeal or a prior petition for a writ of habeas corpus or post-conviction relief; *or*
> (3) *Raised in any other proceeding* that the petitioner has taken to secure relief from his conviction and sentence,
> unless the court finds both cause for the failure to present the grounds and actual prejudice to the petitioner.

(Emphasis added.) The State argued below and argues to this court that the emphasized language applies here because Nika had an opportunity to raise claims of ineffective trial counsel in the SCR 250 proceeding. Therefore, the State maintains that such claims, whether new or repeated, are procedurally barred absent a showing by Nika of cause and prejudice. This argument is reasonable; however, Nika complains that the proceeding did not provide an adequate forum for him to present his claims. We agree with Nika and conclude that the SCR 250 proceeding that we ordered in 1995 did not provide him with a full and fair opportunity to raise claims of ineffective trial counsel.

At that time, SCR 250(IV)(H) provided that this court could refer a capital case on appeal to the district court to conduct hearings on any issue this court considered important, including ''a hearing to determine whether defendant had effective counsel during trial.'' We invoked this provision during Nika's direct appeal, as our order stated, ''to create and preserve a record regarding trial counsel's performance while memories are fresh.'' The attempt to expeditiously decide claims of ineffective trial counsel in this manner proved unfeasible in practice, and the provision in current SCR 250(8)(b) for limited remand to the district court no longer contemplates hearings on the effectiveness of trial counsel during direct appeals.

As this case illustrates, determining the effectiveness of trial counsel during a direct appeal was impracticable in several ways. Normally, post-conviction counsel has the opportunity to peruse this court's decision on direct appeal as a guide and aid in determining what issues should be investigated and raised in a post-conviction habeas petition. Nika's SCR 250 counsel did not have this resource. That counsel also did not have the length of time to investigate possible avenues of relief that post-conviction counsel usually has. Moreover, with simultaneous litigation of both the direct appeal and the SCR 250 proceeding, Nika and his trial coun-

sel were placed in an untenable position. In regard to the direct appeal, trial counsel should have been unconstrained advocates of Nika's position, willing and able to provide advice and support to Nika's direct appeal counsel. However, in the SCR 250 proceeding they found themselves defending their own conduct of the trial against challenges by Nika. In fact, Nika was required to waive his privilege of attorney-client confidentiality in that proceeding even though his direct appeal was not yet decided. We therefore conclude that the SCR 250 proceeding in this case was not, under NRS 34.810(1)(b), a proceeding in which Nika could have fully and adequately raised grounds of ineffective trial counsel. For the same reasons, we also decline to rely on our 1997 order dismissing Nika's appeal following the SCR 250 proceeding as the law of the case.[4]

A petitioner for post-conviction relief is entitled to an evidentiary hearing if he supports his claims with specific factual allegations that if true would entitle him to relief.[5] He is not entitled to such a hearing if the factual allegations are belied or repelled by the record.[6] NRS 34.810(3) requires the petitioner to plead and prove specific facts demonstrating good cause for a ''failure to present the claim or for presenting the claim again'' and actual prejudice.[7]

We reverse the district court's summary dismissal of Nika's habeas claims and remand for that court to determine whether Nika's claims, including claims that trial counsel were ineffective, warrant an evidentiary hearing. Whether or not a claim is decided after an evidentiary hearing, the district court must provide specific findings of fact and conclusions of law supporting its disposition of the claims.

## II. The State's use of a jailhouse informant

Nika claims that the State's use of Wilson, the jailhouse informant, was unconstitutional. The district court held an evidentiary hearing on this claim and rejected it, providing factual findings and legal conclusions. The State has not disputed that Nika could not

---

[4]*See Pellegrini v. State,* 117 Nev. 860, 885, 34 P.3d 519, 535-36 (2001) (recognizing this court's discretion to reconsider its law of a case when warranted).

[5]*Hargrove v. State,* 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

[6]*Id.* at 503, 686 P.2d at 225.

[7]This provision abrogates this court's holding in *Phelps v. Director, Prisons,* 104 Nev. 656, 658-59, 764 P.2d 1303, 1305 (1988), requiring the State to raise waiver or abuse of the writ as affirmative defenses. *See State v. Haberstroh,* 119 Nev. 173, 181, 69 P.3d 676, 681 (2003). Nika nevertheless improperly relies on *Phelps* in his reply brief.

have raised this issue on direct appeal, apparently because he did not learn of and had no reason to know of the pretrial meetings regarding Wilson until sometime after his appeal was decided. The question is whether the claim warrants any relief. We conclude that it does not.

As a preliminary matter, we note that Nika does not claim that the Public Defender should have remained as his counsel despite its representation of Wilson. Therefore, we need not decide whether the trial court correctly found that that representation created a conflict of interest between the Public Defender and Nika. We will make the following observations. The facts in *Coleman v. State,* the opinion which prosecutor Stanton and the trial court looked to in concluding that such a conflict existed, differ substantially from this case.[8] And although Stanton believed that Deputy Public Defender Morrow had acted against Wilson's interest by warning Nika not to speak to other inmates, the trial court did not consider Morrow's action improper, nor do we. Stanton regarded only Wilson's perceived interest in assisting the State and possibly gaining some leniency, but ignored Nika's interest in not incriminating himself in a capital murder case. The Public Defender certainly was as obliged to protect the latter interest as the former. Even assuming that this created a conflict of interest best resolved by ultimately removing the Public Defender from both cases, it is difficult for us to see what other action Morrow could have taken as Nika's counsel when he realized that Nika might be incriminating himself. (If Morrow had also learned Wilson's identity and revealed it to Nika, endangering Wilson, then the question of a conflict with Wilson's interests would be materially different. But this was not the case.)

Nika's first contention is that the State's use of Wilson violated Nika's Sixth Amendment right to counsel. He cites *Massiah v. United States,*[9] which holds that the Sixth Amendment right to counsel prevents admission of evidence of a defendant's statements which have been deliberately elicited by a government agent after the right has attached. Nika enjoyed such a right when he spoke to Wilson because adversarial proceedings had begun[10] and

---

[8]109 Nev. 1, 846 P.2d 276 (1993) (concluding that the Sixth Amendment right to conflict-free counsel was violated where the same public defender attorney represented two clients and worked actively with one client and the State to gain incriminating evidence against the other client).

[9]377 U.S. 201, 205-07 (1964); *see also Fellers v. United States,* 540 U.S. 519 (2004) (same).

[10]*Estelle v. Smith,* 451 U.S. 454, 469-70 (1981) (stating that the Sixth Amendment right to counsel attaches once adversarial proceedings have been initiated); *see also* U.S. Const. amend. VI.

he was represented by the Public Defender. He fails, however, to show that Wilson acted as an agent of the State when he first gained incriminating information from Nika. Determining whether a person acted as a state agent depends on the facts and circumstances of each case and presents a mixed question of fact and law.[11]

Nika speculates that the police ''approached'' Wilson and ''baited'' him into eliciting information about Nika. This speculation lacks hard evidence. Nika points out that when Wilson was interviewed on October 11, 1994, he first spoke about another inmate until the interviewing detective expressly asked about Nika. This does not indicate that Wilson was a state agent: he had already talked with Nika and had already told a deputy at the jail that he had information from Nika. Nika points out that the detective did not refuse Wilson's offer to gather more information. In the interview, when Wilson remarked that he could find out more about the gun Nika used, the detective did not respond. This detail is germane to Wilson's status after the interview when he gained further information from Nika; it does not somehow retroactively render him a state agent in his earlier conversations with Nika. Nika also claims that the transcript of the interview is not complete (or that prosecutor Stanton ''blatantly lied'') because the transcript differs from the description of the interview Stanton gave to the trial court more than two weeks later and because the transcript shows that the detective spoke to Wilson while the tape recorder was off despite stating otherwise. We conclude that these discrepancies are trivial. Nika also stresses that a report by a jail deputy referred to Wilson as ''my informant'' and speculates that other police reports are missing. But ''informant'' is not synonymous with ''agent,'' and speculation unsupported by facts is of no value. In the end, Nika presents no proof, most notably no testimony or even affidavit by Wilson, to contradict the evidence that Wilson did not act on behest of the State initially. This evidence includes Wilson's trial testimony, prosecutor Stanton's testimony at the post-conviction hearing and his original representations to the trial court, prosecutor Viloria's post-conviction testimony, and the timing and substance of events in Wilson's own case, discussed below.

Wilson's status after his first interview with the detective and after Stanton ensured that the Public Defender would be discharged and that Wilson would continue to have access to Nika is not so clear. When during the interview Wilson remarked that he could find out more about the gun, he revealed that he thought his role might be to gather more information for officials. Neither the de-

---

[11]*Simmons v. State,* 112 Nev. 91, 99, 912 P.2d 217, 221 (1996).

tective nor anyone else dissuaded him from this idea, and his trial testimony indicates that he then actively elicited more information from Nika. Furthermore, when Stanton made sure that Wilson stayed in proximity to Nika, Stanton was aware of Wilson's remark, having observed the interview. Stanton was also aware that the two inmates had formed a relationship in which Nika confided in Wilson. But even assuming these facts establish that after the interview Wilson acted as an agent of the State,[12] Nika was not prejudiced because Wilson obtained the primary incriminating evidence—that Nika admitted in some detail to shooting the victim—before approaching the authorities. The little information that Wilson obtained later, mainly that the murder weapon was an automatic, was insignificant.

Nika also suggests that Stanton made an implicit agreement with Wilson for his testimony without revealing it to the defense or the jury. This would violate due process under *Brady v. Maryland*[13] and its progeny because acts which imply an agreement or understanding with a witness are relevant to credibility and must be disclosed.[14] But again Nika fails to provide facts to support his claim. The most that he demonstrates is that according to Stanton's pretrial representation to the trial court, Wilson at his interview "informed the detectives that he would like some consideration for his testimony, although no specifics were given or requested by him." However, prosecutors Stanton and Viloria both testified at the post-conviction hearing that regardless of any expectations on Wilson's part, they neither offered nor provided him with any benefits in exchange for his testimony.

Moreover, the timing and substance of events in Wilson's own case in 1994 repel Nika's assertion that Wilson expected and received leniency in return for his assistance in Nika's case. On September 29, Wilson pleaded guilty to unlawful sale of a controlled substance, having reached a plea agreement requiring the State to concur with the recommendation of the Division of Parole and Probation. About a week passed before Wilson approached officers at the jail, on or around October 7, with information about Nika, and the detective interviewed Wilson on October 11. The Division completed its presentence investigation report on Wilson on November 7, recommending a suspended sentence and probation. In Wilson's statement attached to the report, he proclaimed a

---

[12]*Cf., e.g., People v. Whitt*, 685 P.2d 1161, 1168-73 (Cal. 1984) (concluding that though question was close and difficult, inmate informant's conduct was not attributable to the state), *limitation on other grounds recognized by People v. Marquez*, 822 P.2d 418 (Cal. 1992).

[13]373 U.S. 83 (1963).

[14]*See Giglio v. United States*, 405 U.S. 150, 155 (1972); *Jimenez v. State*, 112 Nev. 610, 622, 918 P.2d 687, 695 (1996).

general willingness to help police, but nothing in the report noted his assistance in Nika's case. Wilson was sentenced on November 16, more than seven months before Nika's trial, and again his assistance in Nika's case was not raised. Thus, Wilson first offered to give information against Nika only after reaching a plea agreement in his own case, and he testified against Nika long after being sentenced himself.

Nika infers from Stanton's presence at Wilson's sentencing that Stanton must have spoken to District Judge Kosach on Wilson's behalf. No other evidence supports this inference, and Stanton denied it. Stanton did not recall attending the sentencing, but there is no need to assume that he was there to benefit Wilson. It is possible that he attended to ensure that the Public Defender withdrew from representing Wilson and/or to see whether Wilson would be in prison or would have to be subpoenaed to testify at Nika's trial. (Wilson's eventual presence was secured from California by a material witness order and bench warrant.) Regardless, Nika fails to provide any proof that Stanton intervened on Wilson's behalf or that Wilson received any benefit from testifying against Nika.

Next, Nika contends that the pretrial meetings between the trial court, Stanton, and at times the Public Defender violated his due process right to disclosure of exculpatory information and his right to conflict-free counsel. In condemning the meetings, Nika relies again on his claims that Wilson was an agent of and had reached an agreement with the State. These contentions are unavailing. As explained above, Wilson initially acted on his own in gaining the primary incriminating evidence from Nika, the Public Defender acted to protect Nika's interests in warning him not to speak to other inmates, and there is no showing that Wilson made an agreement with the State. Nika also claims that Stanton told the defense nothing about Wilson, leaving the defense unable to impeach Wilson's claim that he had no ulterior motive in testifying against Nika. Actually, the State informed the defense before trial about Nika's admissions to Wilson. It appears that the only information not disclosed was Stanton's observation that Wilson told detectives that he would like some consideration for his testimony. Nika emphasizes that Wilson testified he came forward to police because Nika ''just didn't have no heart'' and that the prosecutor relied on this testimony in the penalty phase. Nevertheless, even assuming that Stanton should have informed the defense of Wilson's statement regarding consideration, we agree with the district court that Nika failed to demonstrate prejudice: even if Wilson approached officers hoping to gain some benefit and the jury had learned this, there was no reasonable probability of a different result in Nika's trial.

The district court did not err in denying this claim.

## CONCLUSION

We affirm the district court's judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

SHEARING, C. J., BECKER, MAUPIN and DOUGLAS, JJ., concur.

GIBBONS, J., with whom AGOSTI, J., agrees, dissenting:

Appellant Avram Nika has failed to overcome the procedural bars to his claims. In my view, Nika had the opportunity to raise his claims of ineffective trial counsel in the SCR 250 proceeding. Accordingly, the procedural bars apply.

NRS 34.810(1)(b) is the controlling statute and provides that a court must dismiss a petition if "[t]he petitioner's conviction was the result of a trial and the grounds for the petition could have been . . . [r]aised in any other proceeding." NRS 34.810(3) requires the petitioner to plead and prove specific facts demonstrating good cause for a "failure to present the claim or for presenting the claim again" and actual prejudice. Therefore, under NRS 34.810(1)(b) and NRS 34.810(3), any claims of ineffective trial counsel, whether new or repeated, are procedurally barred unless Nika shows good cause and prejudice.

I disagree with the majority's conclusion that the SCR 250 proceeding we ordered in 1995 did not provide Nika with a full and fair opportunity to raise his claims of ineffective trial counsel. I disagree with the majority that Nika's counsel did not have the time usually afforded to post-conviction counsel to investigate possible avenues of relief. Although this court's order initially directed that the proceeding conclude within ninety days, the district court did not hold an evidentiary hearing on the matter until more than fourteen months had passed.[1] Because Nika had more than a year to prepare for the SCR 250 proceeding, there was no prejudice.

Additionally, Nika presents no specifics as to what viable claims were neglected in the SCR 250 proceeding and fails to demonstrate how he was precluded from challenging his appellate counsel's performance. Although he claims that the counsel who represented him at the SCR 250 proceeding could neither call him to testify nor cross-examine trial counsel vigorously, he does not explain why or how his case was limited in these regards. Taken as a whole, the facts of the instant case indicate that Nika has not shown good cause or prejudice. Therefore, I would affirm the order of the district court denying the post-conviction petition for a writ of habeas corpus.

---

[1]We entered our order in August 1995; the hearing was not conducted until November 1996.