**An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

AVRAM VINETO NIKA,
Appellant,
vs.
RENEE BAKER, WARDEN; AND
CATHERINE CORTEZ MASTO,
ATTORNEY GENERAL OF THE STATE
OF NEVADA,
Respondents.

No. 59776

**FILED**

JUL 30 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _R. Malone_
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from an order of the district court denying a post-conviction petition for a writ of habeas corpus in a death penalty case. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

In 1994, Avram Nika bludgeoned and shot to death Edward Smith after Smith had stopped to assist Nika on I-80, 20 miles outside of Reno, Nevada. A jury convicted Nika of first-degree murder with the use of a deadly weapon and sentenced him to death. This court affirmed the conviction and sentence. *Nika v. State, (Nika I)*, 113 Nev. 1424, 951 P.2d 1047 (1997), *overruled in part by Leslie v. Warden*, 118 Nev. 773, 780 & n.17, 59 P.3d 440, 445 & n.17 (2002). Nika unsuccessfully sought post-conviction relief in a prior petition. *Nika v. State (Nika III)*, 124 Nev. 1272, 198 P.3d 839 (2008); *Nika v. State (Nika II)*, 120 Nev. 600, 97 P.3d 1140 (2004). In this appeal from the denial of his second post-conviction petition for a writ of habeas corpus, Nika claims that the district court erred in denying his petition as procedurally barred and barred by the law-of-the-case doctrine. He further contends that even if he cannot demonstrate good cause and prejudice to overcome the procedural bars,

SUPREME COURT
OF
NEVADA

(O) 1947A

14-24923

the district court erred by denying his petition because the failure to consider it on the merits resulted in a fundamental miscarriage of justice.

*Procedural bars*

Nika's post-conviction petition for a writ of habeas corpus is subject to several procedural bars. First, to the extent that Nika alleged trial error, those claims were appropriate for direct appeal and thus subject to dismissal for waiver pursuant to NRS 34.810(1)(b)(2). Second, the petition was untimely as it was filed on April 22, 2010, which is more than one year after this court issued its remittitur on direct appeal in 1998. NRS 34.726(1). Third, to the extent that the petition raised claims that were not raised in the first post-conviction petition, the second petition constituted an abuse of the writ and to the extent that the petition raised the same claims that were raised in the first petition, the second petition was successive. NRS 34.810(2). To overcome these procedural bars, Nika had to demonstrate good cause and prejudice. NRS 34.726(1); NRS 34.810(1)(b), (3).

As cause to overcome the procedural default rules, Nika advances several arguments: his post-conviction counsel were ineffective, and the district court failed to cumulatively consider the State's misconduct.[1]

---

[1]Nika also asserts that the failure to present mitigating evidence in the first petition was not his fault. NRS 34.726(1) as requires "a petitioner [to] show that an impediment external to the defense prevented him or her from complying with the state procedural default rules." *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). This language contemplates that the delay in filing a petition must be caused by a circumstance not within the control of the defense team as a whole, not solely the defendant. Considering the nature and purpose of legal representation, we conclude that Nika's view that NRS 34.726(1)

*continued on next page...*

*Ineffective assistance of post-conviction counsel*

Where the appointment of post-conviction counsel is mandated by statute, the petitioner has a right to effective assistance of that counsel. *Crump v. Warden*, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997). Thus, the ineffective assistance of post-conviction counsel may establish good cause and, if it has merit, prejudice to overcome the procedural defaults under NRS 34.810.[2] *Id.* at 304-05, 934 P.2d at 253-54. As Nika filed his petition within a reasonable time after this court affirmed the district court's order denying his prior petition, his claim of ineffective assistance of post-conviction counsel meets the first prong of the good cause showing required by NRS 34.726(1). The question then is whether the district court erred in concluding that Nika failed to demonstrate that post-conviction counsel provided ineffective assistance in failing to raise various claims in the first petition or in failing to adequately litigate certain claims that were raised in the first petition.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review," *Evans v. State*,

---

*...continued*

contemplates only delay personally caused by a petitioner is untenable. Therefore, the district court did not err in rejecting this claim of good cause.

[2]In his brief, Nika cites *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012), in support of his contention that the ineffectiveness of post-conviction counsel denied him a full and fair opportunity to litigate his prior petition. We need not address *Martinez* in this case because under our case law Nika was entitled to the effective assistance of post-conviction counsel because that counsel was appointed pursuant to a statutory mandate. *See Crump v. Warden*, 113 Nev. at 303, 934 P.2d at 253.

Supreme Court
of
Nevada

(O) 1947A

117 Nev. 609, 622, 28 P.3d 498, 508 (2001), but the district court's purely factual findings are entitled to deference, *Lara v. State*, 120 Nev. 177, 179, 87 P.3d 528, 530 (2004). Under the two-part test established by the United States Supreme Court in *Strickland v. Washington*, a defendant must show that counsel's performance (1) fell below an objective standard of reasonableness and (2) resulted in prejudice. 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987-88, 998, 923 P.2d 1102, 1107, 1114 (1996); *see also Crump*, 113 Nev. at 304, 934 P.2d at 254 (indicating that *Strickland* test applies to effective assistance of post-conviction counsel appointed pursuant to statutory mandate). "The defendant carries the affirmative burden of establishing prejudice." *Riley v. State*, 110 Nev. 638, 646, 878 P.2d 272, 278 (1994). A court need not consider both prongs of the *Strickland* test if a defendant makes an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. With regard to his claims of ineffective assistance of post-conviction counsel, Nika must demonstrate that his post-conviction counsels' performance were deficient and that, had the omitted claims been raised or the claims litigated in a different fashion, he would have been granted relief. We conclude that Nika did not demonstrate that he was entitled to relief for the reasons discussed below.[3]

---

[3]Nika asserts that the district court applied the incorrect standard for reviewing his claims of ineffective assistance of post-conviction and trial counsel. As we conclude that Nika's claims are not meritorious under the correct standard, even assuming the district court applied an incorrect standard, he is not entitled to relief. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (holding that a correct result will not be reversed simply because it is based on the wrong reason).

*Popularly elected judges*

Nika argues that the district court erred in denying his claim that post-conviction counsel were ineffective for not challenging his conviction and death sentence as invalid because his proceedings were conducted before elected judges as an abuse of the writ. He contends that the district court's conclusion that the claim could have been brought sooner ignored his claim of ineffective assistance of all prior counsel as good cause. However, he failed to substantiate his claim with portions of the record from his trial that demonstrated bias against him based on the fact that the district judge was popularly elected and he was found guilty and sentenced to death by a jury, not the judge. Because his allegations are insufficient to establish a meritorious trial- or appellate-counsel claim, the district court did not err in denying this post-conviction-counsel claim.

*Failure to introduce mitigation evidence*

Nika argues that the district court erred in denying his claim that post-conviction counsel failed to conduct sufficient investigation into his background to support the claim in his prior petition that trial counsel provided ineffective assistance. He contends that counsel failed to speak with relatives and neighbors, collect school and military records, or have him evaluated by a mental health expert.

We conclude that this claim lacks merit. Nika did not demonstrate that the additional evidence would have altered the outcome of trial and thus formed the basis of a successful trial-counsel claim. At the penalty hearing, the jury found that the murder was committed at random and without apparent motive. This is a compelling aggravating circumstance. Smith stopped to assist Nika on the side of the highway. Thereafter, Nika struck him several times on the back of the head—at

least once while Smith was lying face down on the ground. Nika then rolled Smith onto his back, placed the gun against Smith's head, and shot him. We concluded that the murder occurred in a calculated manner. *Nika III*, 124 Nev. at 1295, 198 P.3d at 854. In addition, the jury was aware that Nika was prone to violent outbursts and threats of violence within his own family, and he had sexually assaulted a woman in 1989. Trial counsel had presented testimony from Nika's wife and his sister-in-law that he was loyal to his friends, a child at heart, and liked by the children in the family. The jury found this evidence insufficiently mitigating. The additional mitigation evidence concerning his upbringing, family history, and cognitive impairments is not powerful enough to demonstrate a reasonable probability of a different outcome had trial counsel presented it. For this reason, we conclude that Nika failed to meet the prejudice prong of his post-conviction-counsel claim.

*Failure to investigate county contract and conflict of interest*

Nika argues that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to discover a conflict of interest based on defense counsel's reimbursement contract. He alleges that the contract created a conflict of interest because it pitted the appointed attorney's interest in compensation against the need to spend funds on investigative services for the client, and that had this conflict not existed, trial counsel would have hired a mental health expert to evaluate Nika and testify at the penalty hearing. As discussed above, Nika failed to demonstrate a reasonable probability that the evidence developed by the mental health expert would have altered the outcome of the penalty hearing. Thus, Nika also failed to meet the prejudice prong of his post-conviction-counsel claim.

*Failure to litigate motion to suppress Nika's confessions*

Nika contends that trial counsel were ineffective for failing to present the following witnesses to testify during his suppression hearing: (1) an expert witness to testify about cultural differences and his cognitive deficits, (2) lay witnesses to corroborate his poor English skills, (3) an expert familiar with the Yugoslavian legal system to testify that Nika would concede guilt because he feared torture and that Nika should have expected the automatic appointment of counsel in the case of a serious offense, and (4) a Roma cultural expert to demonstrate that Nika perceived that police officers would treat him unfairly as he was Roma. He asserts the district court erred in concluding that post-conviction counsel were not ineffective for failing to litigate this claim of ineffective assistance of trial counsel in an effective manner.

We conclude that Nika failed to demonstrate that he was prejudiced by post-conviction counsels' omission of this trial-counsel claim. Nika's proposed new evidence is unpersuasive because it is largely internally inconsistent as some of that evidence showed that Nika had cognitive difficulties and confessed because he feared torture by the authorities, while other evidence portrayed him as sophisticated enough with the Serbian justice system to expect appointed counsel during his interrogation. The evidence is also inconsistent with the trial record—his proffered fear of torture was undermined by the fact that he made requests for food and cigarettes during the brief interrogation. Therefore, this evidence does not undermine the testimony presented in the trial court that Nika had communicated in English with jail staff, detectives, and another inmate or show that his waiver was not knowing or voluntary. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)

(admitting evidence where the prosecution demonstrates that an accused knowingly and voluntarily waived his right to remain silent). Moreover, there was sufficient evidence apart from the statement to sustain his conviction, including witnesses who placed him in the area of the murder with the victim, the victim's blood on Nika's clothing, the victim's belongings in Nika's possession, and Nika's self-incriminating statements to another inmate. Given these circumstances, we are not convinced that post-conviction counsels' omission of this trial-counsel claim was objectively unreasonable or resulted in prejudice. Therefore, Nika failed to demonstrate that the district court erred in denying this claim.

*Failure to conduct adequate voir dire*

Nika contends that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to argue that trial counsel were ineffective during voir dire. He asserts that trial counsel were ineffective for (1) failing to question some veniremembers, (2) failing to ask meaningful questions of other veniremembers, (3) failing to inquire about veniremembers' knowledge of the Serbian military conflict, (4) failing to life-qualify the venire, (5) making inflammatory comments during jury selection, (6) failing to object pursuant to Batson[4] to the State's use of peremptory challenges to remove veniremembers based on their gender, (7) failing to object to prosecution questions that undermined the presumption of innocence, (8) failing to strike a veniremember earlier in the process to prevent him from contaminating the rest of the venire, and (9) failing to remove biased veniremembers. He also contends that trial counsel failed to adequately address State misconduct during voir

---

[4]*Batson v. Kentucky*, 476 U.S. 79 (1986).

dire. He asserts that if post-conviction counsel had raised these claims concerning voir dire as trial-counsel claims, the court would not have denied them as procedurally defaulted.

We conclude that the district court did not err in denying these claims because Nika failed to show prejudice. Claims (1)-(4) are based on trial counsels' failure to make particular inquiries during voir dire. In general, those decisions involve trial strategy and it is not clear that the strategy employed by counsel was not objectively reasonable. *See, e.g., Stanford v. Parker*, 266 F.3d 442, 453-55 (6th Cir. 2001) (observing that defendant has right to life-qualify jury upon request but failure to do so may be reasonable trial strategy); *Brown v. Jones*, 255 F.3d 1273, 1279-80 (11th Cir. 2001) (reasonable trial strategy for counsel to focus jurors' attention on the death penalty as little as possible and therefore not life-qualify jurors); *Camargo v. State*, 55 S.W.3d 255, 260 (Ark. 2001) ("The decision to seat or exclude a particular juror may be a matter of trial strategy or technique."). And, as to all claims but (6), *supra,* Nika failed to demonstrate prejudice because he failed to show that the seated jury was not impartial.[5] *See Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799

---

[5]Nika only identifies two seated jurors who he contends were biased against him: Russell Horning and Raymond Freeman. As to Horning, the allegation of bias is based on Horning's discovery during trial that his brother-in-law worked at the same base where the victim was stationed. Because Horning indicated that he did not know the victim and that it would not affect his ability to impartially weigh the facts of the case, the record does not support the conclusion that Horning was biased. As to Freeman, the allegation of bias involves his views on penalty as reflected in an affidavit completed roughly fifteen years after the verdict. This information was not available to trial counsel and therefore could not be the basis for a claim that trial counsel were ineffective. *See Strickland,* 466 U.S. at 689 ("A fair assessment of attorney performance requires that
*continued on next page...*

Supreme Court
OF
Nevada

(O) 1947A

9

(1996) (stating that "[i]f the impaneled jury is impartial, the defendant cannot prove prejudice" resulting from district court's limitation of voir dire); *see also Ham v. State*, 7 S.W.3d 433, 439 (Mo. Ct. App. 1999) ("Even assuming it would have been better strategy to strike [a particular juror], we fail to see how [defendant] could have been prejudiced because one qualified juror sat rather than another."). Because a trial-counsel claim on any of these grounds would not have entitled Nika to relief, he cannot demonstrate prejudice based on post-conviction counsels' failure to raise them as such.

As to the *Batson*-based trial-counsel claim, Nika failed to demonstrate that post-conviction counsels' performance was deficient or that he was prejudiced by the failure to argue trial counsels' ineffectiveness. Assuming that trial counsel could have demonstrated a prima facie case of discrimination, *see Libby v. State*, 113 Nev. 251, 255, 934 P.2d 220, 223 (1997) (explaining that State's use of seven of nine of its peremptory challenges to remove women supports an inference of discrimination), Nika bore the burden of ultimately demonstrating that any gender-neutral reason given for the strike was a pretext for discrimination, *Ford v. State*, 122 Nev. 398, 403, 132 P.3d 574, 577 (2006); *see Johnson v. California*, 545 U.S. 162, 171 (2005) (noting the "burden of

---

*...continued*
every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). At the time of trial, Freeman did not indicate that he could not follow the instructions of the court, or that he would impose the death penalty in every case. Based on the information available to trial counsel, there were no grounds to remove Freeman.

persuasion 'rests with, and never shifts from, the opponent of the strike'" (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995))). The type of questions asked of the potential jurors did not clearly indicate a discriminatory intent, women were not entirely eliminated from the jury or even underrepresented, and the case did not appear sensitive to bias based on gender. *See Ex Parte Trawick*, 698 So. 2d 162, 168 (Ala. 1997) (considering, among other factors, the manner in which a party questions potential jurors and disparate treatment during voir dire, as evidence of discriminatory intent); *State v. Martinez*, 42 P.3d 851, 855 (N.M. App. 2002) (considering, among other factors, whether cognizable group was underrepresented on the jury or the case was particularly sensitive to bias as evidence of discriminatory intent). Nika's speculation that the State would have been unable to proffer gender-neutral reasons for the strikes or its reasons would be exposed as a pretext for discrimination did not demonstrate that trial counsels' failure to pursue a *Batson* objection was objectively unreasonable based on the information available at the time of trial. *See Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002) (observing that counsel's decision if and when to object is a tactical decision); *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) ("[T]actical decisions are virtually unchallengeable.").

*Failure to refute evidence of first-degree murder*

Nika argues that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to litigate trial counsels' failure to refute the evidence of first-degree murder. He asserts that trial counsel were ineffective for failing to develop evidence that Nika may have acted in self-defense or the heat of passion in response to the

victim attempting to rob him at gunpoint or evidence that might explain why he was not forthcoming with the police.

We have previously concluded that the physical evidence in this case belies a claim of self-defense and instead shows a calculated effort to kill the victim. *Nika v. State (Nika III)*, 124 Nev. 1272, 1295, 198 P.3d 839, 854 (2008). The victim was shot while he was lying helpless on the ground after being felled by three strikes to the back of his head. *Id.* at 1277, 198 P.3d at 843. As he could not have been a threat at the time he was shot, self-defense is not a viable defense. *See Runion v. State*, 116 Nev. 1041, 1051, 13 P.3d 52, 59 (2000) (acknowledging that the killing of another in self-defense is justified where the person who does the killing "actually and reasonably believes" that he is in imminent danger of death or great bodily injury from the assailant and the use of force that might cause death of the assailant is "absolutely necessary under the circumstances . . . for the purpose of avoiding death or great bodily injury to himself"). Further, as the victim was struck at least once while lying face down and then turned over and shot in the forehead, there was undoubtedly time to reflect and deliberate on the course of action. Therefore, Nika did not demonstrate that psychological evidence or argument for a lesser degree of homicide would have altered the outcome of trial. For these reasons, a trial-counsel claim based on the failure to refute the evidence of first-degree murder with evidence of self-defense or heat of passion would not have had merit. We cannot fault post-conviction counsel for omitting it.

Nika also failed to demonstrate that post-conviction counsel were ineffective for failing to introduce the testimony of a Roma cultural expert to explain how his distrust of the police prevented him from

asserting that he acted in self-defense during his first interview. However, expert testimony explaining Nika's propensity to lie to police does not render any account that he gave to police any more credible than any other account. Moreover, the physical evidence at the scene belied any claim of self-defense. Therefore, Nika failed to demonstrate that the testimony would have affected the outcome of the trial and that post-conviction counsel were ineffective for failing to introduce it during his prior post-conviction proceedings.

*Failure to ensure all bench conferences are recorded*

Nika asserts that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to claim that trial counsel were ineffective for failing to object to unrecorded bench conferences. Nika failed to explain how he was prejudiced. He did not specify the subject matter of the listed bench conferences or explain their significance. *See Daniel v. State,* 119 Nev. 498, 508, 78 P.3d 890, 897 (2003). Thus, he failed to support this claim with specific facts that, if true, would entitle him to relief. *See Hargrove v. State,* 100 Nev. 498, 502, 686 P.2d 222, 225 (1984). Therefore, the district court did not err in denying this claim.

*Decision to waive spousal privilege*

Nika argues that the district court erred in denying his claim that post-conviction counsel were ineffective for not challenging trial counsels' waiver of Nika's spousal privilege. He claimed that but for the testimony of his wife, Rodika, the State would not have been able to prove when he left California, his reason for leaving, his mood at the time of leaving, and the fact that Nika is not very bright and prone to panic in stressful situations. We conclude that Nika failed to show that post-

conviction counsel was ineffective. Rodika's direct testimony only addressed her observations of Nika's conduct and did not recount any conversations between her and Nika, therefore, the testimony would have been admissible regardless of Nika's consent. *See Contancio v. State*, 98 Nev. 22, 24-25, 639 P.2d 547, 549 (1982) (recognizing that spousal privilege under NRS 49.295(1)(b) prohibits testimony about communications made during the marriage). Further, Rodika's testimony did not incriminate Nika or prove any of the elements of first-degree murder.

*Failure to challenge venue*

Nika contends that the district court erred in denying his claim that post-conviction counsel were ineffective for omitting a trial-counsel claim based on their failure to move for a change in venue. He argues that such a motion was warranted because media reports of his crime and the tensions in former Yugoslavia made it impossible for him to receive a fair trial.

We conclude that Nika cannot demonstrate that post-conviction counsels' omission of this trial-counsel claim was objectively unreasonable because there was no basis for trial counsel to request a change of venue. Nearly all of the veniremembers indicated that they had not seen any news reports related to the trial, and the two veniremembers who had been exposed to media reports indicated that those reports would not influence their decision. In addition, a veniremember who indicated that she was familiar with news reports of the hostilities in Yugoslavia stated that her knowledge of those events would not affect her ability to impartially judge the facts of Nika's case. From this record it appears that the publicity was not so pernicious as to have been on the mind of every

potential juror. *See Sonner v. State,* 112 Nev. 1328, 1336, 930 P.2d 707, 712-13 (1996) (noting that even where pretrial publicity has been pervasive, this court has upheld the denial of motions for change of venue where the jurors assured the district court during voir dire that they would be fair and impartial in their deliberations because, in addition to presenting evidence of inflammatory pretrial publicity, a defendant seeking a change of venue must demonstrate actual bias on the part of the empanelled jury), *modified on rehearing on other grounds by* 114 Nev. 321, 955 P.2d 673 (1998). Because there is insufficient support for the omitted trial-counsel claim, the district court did not err in denying the claim that post-conviction counsel was ineffective for omitting it.[6]

### Failure to show a benefit to Wilson

Nika contends that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to demonstrate that trial counsel were ineffective for failing to prove that Nathaniel Wilson, who testified that Nika confessed details of the murder while they were incarcerated in the Washoe County Jail, received a benefit for his testimony. In his claim below, Nika asserted that Wilson's sentencing hearing proves that Wilson received a benefit for his testimony. We conclude that Nika failed to demonstrate that post-conviction counsel

---

[6]Nika also argues that the district court erred in denying a claim that his conviction and sentence are invalid due to the influence of pretrial publicity as an abuse of the writ. He asserts that he claimed that counsels' ineffective assistance constituted good cause to raise the claim in a subsequent petition. As we conclude that Nika failed to demonstrate that the pretrial publicity was so pernicious as to have warranted a change in venue, he failed to demonstrate deficiency or that he was prejudiced by counsels' failure to address the publicity.

was ineffective. In evaluating his first petition, we concluded that he failed to demonstrate that Wilson acted as an agent of the State when he obtained incriminating statements because he did not show that Wilson received any benefit for his testimony. *Nika v. State (Nika II)*, 120 Nev. 600, 609, 97 P.3d 1140, 1146 (2004). Nika does not point to any evidence that post-conviction counsel failed to develop in litigating the claim in his first petition. Therefore, the district court did not err in denying this claim.

### Improper opening arguments

Nika argues that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to claim that trial counsel were ineffective for referring to the case as the "Good Samaritan killing" during opening statement. We disagree. Given the context of the comment (an attempt to defuse the effect of the media's characterization of the crime), the brevity of the comment, and the substantial evidence of Nika's guilt, Nika cannot demonstrate a reasonable probability of a different outcome had trial counsel not made the comment. *Cf. Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004) (stating that prosecutor's statements are prejudicial when they "so infected the proceedings with unfairness as to make the results a denial of due process"). Because the omitted trial-counsel claim had no reasonable likelihood of success, we cannot fault post-conviction counsel for omitting it. The district court did not err in denying this claim.

### Failure to object to prosecutorial misconduct

Nika contends that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to claim that trial and appellate counsel were ineffective for failing to argue that the

State committed prosecutorial misconduct during its arguments. We conclude these arguments lack merit for the reasons discussed below.

*Disparaging counsel*

Nika argues that post-conviction counsel should have raised a claim that trial counsel were ineffective in failing to object when the prosecutor disparaged defense counsel in stating that the defense "doesn't know the significance of the evidence," made mistakes in assessing the evidence, and made numerous suppositions. We disagree. Although a prosecutor may not "disparage defense counsel or legitimate defense tactics," *Browning v. State*, 124 Nev. 517, 534, 188 P.3d 60, 72 (2008); *see Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004), the prosecutor merely responded to arguments made and inferences drawn by the defense concerning the facts in evidence and were therefore not objectionable. Because the comments were not objectionable, post-conviction counsel could not have used them as a basis to challenge trial or appellate counsel's effectiveness. *Epps v. State*, 901 F.2d 1481, 1483 (8th Cir. 1990).

*Send a message*

Nika argues that post-conviction counsel should have claimed that trial counsel were ineffective in failing to object when the prosecutor asked the jury to vote for death to send a message to the community. We disagree. "[A] prosecutor in a death penalty case properly may ask the jury, through its verdict, to set a standard or make a statement to the community." *Williams v. State*, 113 Nev. 1008, 1020, 945 P.2d 438, 445 (1997), *overruled on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000). As the comment was not objectionable, it could not be the basis for a claim of ineffective assistance of trial, appellate, or post-

conviction counsel. *Epps*, 901 F.2d at 1483. Therefore, the district court did not err in denying this claim.

*Jury's responsibility*

Nika argues that post-conviction counsel should have claimed that trial counsel were ineffective in failing to object to comments he contends shifted the burden of proof and implied that the jurors were not personally responsible for the verdict. However, the comments about which Nika complains were fair responses to defense arguments. Because the comments were not objectionable, they could not form the basis for an ineffective assistance of trial, appellate, or post-conviction counsel. *Id.* Therefore, the district court did not err in denying this claim.

*Failure to litigate trial counsel's ineffectiveness during the penalty phase of trial*

Nika argues that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to adequately litigate trial counsels' ineffectiveness during the penalty phase of trial. He contends that trial counsel were ineffective for failing to point out his lack of criminal history, advising him to waive his right to allocution, failing to adequately cross-examine the victim's wife and daughter, failing to object to improper jury instructions, and making inappropriate closing arguments.

We conclude that these arguments lack merit. First, Nika cannot demonstrate that evidence of his lack of criminal convictions would be sufficiently persuasive to alter the outcome of the proceeding, considering evidence that he threatened people with violence, committed violence against family members, and engaged in a sexual assault. Second, the district court advised Nika of his right to make a statement in

allocution and, consistent with counsel's advice, he chose to remain silent. Third, Nika failed to demonstrate that trial counsel were ineffective with respect to the cross-examination of the victim's family about whether the victim carried a firearm in his car or became angered easily by mechanical problems. The victim's wife had already testified during the guilt phase that the victim did not own a firearm. Further, considering the calculated nature of the killing, pursuing testimony that the victim had a weapon or provoked the incident would have been fruitless. Moreover, given that the defense closing argument stressed the morality of imposing the death penalty, Nika cannot demonstrate that his trial counsels' decision to elicit testimony that the victim himself was a kind and forgiving person was not part of a reasonable trial strategy. See Foster v. State, 121 Nev. 165, 170, 111 P.3d 1083, 1087 (2005) (recognizing that reasonable strategic decisions are "[v]irtually unchallengeable absent extraordinary circumstances" (internal quotation marks omitted)). In addition, the remaining claims that trial counsel were ineffective for advising Nika to waive allocution, failing to object to jury instructions, and making improper closing arguments were raised and decided in a previous post-conviction proceeding. Further consideration of them is thus barred by the law-of-the-case doctrine. See Hall v. State, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975). Nika's desire to have the errors considered in a cumulative error analysis is not a sufficient ground to avoid the law-of-the-case doctrine. Tien Fu Hsu v. Cnty. of Clark, 123 Nev. 625, 630, 173 P.3d 724, 729 (2007) (recognizing grounds for avoiding the law-of-the-case doctrine); see also In re Reno, 283 P.3d 1181, 1224, 1250 (Cal. 2012). As this court found no error regarding the failure to object to penalty phase jury instructions, see Nika v. State (Nika III), 124 Nev. 1272, 1293-97, 198

P.3d 839, 853-56 (2008), those claims may not be cumulated. *See Reno*, 283 P.3d at 1224 ("[C]laims previously rejected on their substantive merits—i.e., this court found no legal error—cannot logically be used to support a cumulative error claim because we have already found there was no error to cumulate.") Therefore, the district court did not err in denying these post-conviction-counsel claims.

*Failure to engage Serbian consulate*

Nika contends that the district court erred in denying his claim that post-conviction counsel were ineffective for failing to engage the services of the Serbian consulate in litigating his prior post-conviction petition. He asserts that the consulate would have paid for a mental health expert, investigated his background in Serbia, and aided witnesses in traveling to testify. He contends that the consulate's assistance would have aided in demonstrating that trial counsel were ineffective for failing to seek the consulate's assistance in litigating the suppression hearing, guilt phase of trial, and the case in mitigation. We conclude that Nika failed to demonstrate prejudice from post-conviction counsels' litigation of this claim. As discussed above, the evidence of Nika's psychological condition was not so persuasive as to undermine the evidence received at the suppression hearing that Nika responded appropriately to questioning and did not seem confused or incapable of waiving his right to remain silent. As to the guilt phase of trial, evidence of his cognitive disorder was not so persuasive that it would undermine the physical evidence demonstrating that the murder was calculated and deliberate. Lastly, Nika did not demonstrate that any mitigation evidence that the consulate could have aided in producing would have had an effect on the outcome of

the penalty hearing. Therefore, the district court did not err in denying this post-conviction-counsel claim.[7]

*Failure to cumulatively consider the State's misconduct*

Nika contends that the district court erred in denying his petition because it failed to consider, cumulatively, challenges to the jury instructions, counsels' inappropriate closing arguments, the State's use of a jailhouse informant in violation of *Massiah v. United States*, 377 U.S. 201 (1964), the failure to disclose exculpatory evidence, the failure to correct false testimony, collusion with the trial judge to violate his rights under *Massiah*, violation of his *Miranda*[8] rights, and improper actions during voir dire. We disagree. Nika bases his assertion on cases that require courts to consider the cumulative impact of violations of *Brady v. Maryland*, 373 U.S. 83 (1963), *e.g., Jimenez v. State*, 112 Nev. 610, 623, 918 P.2d 687, 695 (1996); *Jackson v. Brown*, 513 F.3d 1057, 1071, 1076 (9th Cir. 2008); *Castleberry v. Brigano*, 349 F.3d 286, 291-92 (6th Cir. 2003). This court found no violation of Nika's rights under *Miranda. See Nika I*, 113 Nev. at 1438-39, 951 P.2d at 1056-57. It further concluded that Nika failed to demonstrate prejudice from counsel's failure to raise a claim under *Massiah, Nika II*, 120 Nev. at 611, 97 P.3d at 1148, and that Nika failed to demonstrate that his counsel were ineffective for failing to

---

[7]Nika argues that he never received a full and fair opportunity to litigate his claims of ineffective assistance of trial counsel because the district court denied his petition without conducting an evidentiary hearing. As his claims of ineffective assistance of post-conviction counsel and trial counsel lack merit, the district court did not err in not conducting an evidentiary hearing.

[8]*Miranda v. Arizona*, 384 U.S. 436 (1966).

 

address error regarding jury instructions and error regarding closing arguments. *See Nika III*, 124 Nev. at 1289-90, 1292-93, 198 P.3d at 851-52, 853. Therefore, those claims may not be cumulated. *See Reno*, 283 P.3d at 1224 ("[C]laims previously rejected on their substantive merits— i.e., this court found no legal error—cannot logically be used to support a cumulative error claim because we have already found there was no error to cumulate."). Nika has cited no authority that requires this court to consider the cumulative effect of previously rejected or otherwise defaulted claims. Therefore, he has not demonstrated good cause to overcome the procedural bars or to avoid the law-of-the-case doctrine.

*Law-of-the-case doctrine*

Nika argues that the district court erred in denying several of his claims as barred by the law-of-the-case doctrine. "When an appellate court states a principle or rule of law necessary to a decision, the principle or rule becomes the law of the case and must be followed throughout its subsequent progress, both in the lower court and upon subsequent appeal." *Wickliffe v. Sunrise Hosp. Inc.*, 104 Nev. 777, 780, 766 P.2d 1322, 1324 (1988). We have the "discretion to revisit the wisdom of [our] legal conclusions when [we] determine[ ] that further discussion is warranted," *Pellegrini v. State*, 117 Nev. 860, 885, 34 P.3d 519, 535-36 (2001), and may "'depart from our prior holdings only where we determine that they are so clearly erroneous that continued adherence to them would work a manifest injustice,'" *Tien Fu Hsu*, 123 Nev. at 631, 173 P.3d at 729 (quoting *Clem v. State*, 119 Nev. 615, 620, 81 P.3d 521, 525 (2003)).

*Prejudice review*

Nika contends that the district court erred in denying claims challenging the effective assistance of appellate counsel, the at-random-

and-without-apparent-motive aggravating circumstance, invalid jury instructions, and the lethal injection protocol as barred by the law-of-the-case doctrine because it could not perform an effective prejudice review without considering the previously denied claims. We disagree. Nika does not cite any authority decided since the prior decisions in his case that warrants a departure from the doctrine. *See id.* at 630, 173 P.3d at 729 (noting that federal courts have adopted exception to law-of-the-case doctrine when there has been an intervening change in controlling law). He also has not alleged that the prior decisions are clearly erroneous. *See id.* at 631, 173 P.3d at 729. His assertion that these claims need to be reconsidered in order to evaluate the impact of other claims that are not barred is not a recognized ground to avoid the law-of-the-case doctrine. *See Reno*, 283 P.3d at 1224, 1250.

### *Premeditation instruction*

Nika argues that the district court erred in denying his claim that the premeditation and deliberation instruction was improper. He contends that this court should reconsider its prior decision on this claim in light of intervening federal authority. Nika failed to demonstrate circumstances to warrant departure from the law-of-the-case doctrine. The unpublished and federal district court decisions he cites calling *Nika III*, 124 Nev. 1272, 198 P.3d 839, into doubt are not binding on this court. *See* 9th Cir. R. 36-3(a); *Blanton v. N. Las Vegas Mun. Court*, 103 Nev. 623, 633, 748 P.2d 494, 500 (1987), *aff'd*, 489 U.S. 538 (1989); *United States v. Soto-Castelo*, 621 F. Supp. 2d 1062, 1069 n.2 (D. Nev. 2008), *aff'd*, 361 F. App'x 782 (9th Cir. 2010); *see also* SCR 123. Further, the cited decisions are called into doubt by the Ninth Circuit's recent decision in *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013), *cert. denied*, ___ U.S. ___, 134 S.

Ct. 526 (2013), which disapproved of the holding in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), and noted its effective overruling by *Nika III*. *Babb*, 719 F.3d at 1029-30. Nika has not cited any controlling authority that would warrant reconsideration of this claim.

### Weighing instruction

Nika argues that the district court erred in denying his claim that the trial court erred in failing to instruct the jury that the weighing of aggravating circumstances and mitigating circumstances must be beyond a reasonable doubt. He contends that this claim is not barred by the law-of-the-case doctrine because it was not raised in any prior proceeding. If it was not raised in a prior proceeding, the claim is procedurally defaulted under NRS 34.810. And Nika cannot demonstrate prejudice to overcome the procedural default because this court recently held in *Nunnery v. State*, 127 Nev. ___, ___, 263 P.3d 235, 241, 250-53 (2011), that the weighing of aggravating and mitigating circumstances "is not a factual finding that is susceptible to the beyond-a-reasonable-doubt standard of proof," *id.* at ___, 263 P.3d at 250, and therefore is not subject to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). Therefore, the district court reached the correct result. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (noting that this court will affirm the judgment of the district court if it reached the correct result for the wrong reason).

### Closing arguments and jury instructions

Nika contends that the district court erred in denying his claims that trial counsel were ineffective for making inappropriate closing arguments and not objecting to jury instructions during the guilt phase of trial. He concedes that post-conviction counsel raised these claims in his

first post-conviction petition but asserts that the claims should be considered with his remaining claims to assess their cumulative prejudicial effect. We conclude that Nika's argument lacks merit. The aforementioned claims were raised and decided in a previous post-conviction proceeding. Further consideration of the claims is thus barred by the law-of-the-case doctrine. *See Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975). Nika's desire to have the errors considered in a cumulative error analysis is not a sufficient ground to avoid the law-of-the-case doctrine. *Tien Fu Hsu*, 123 Nev. at 630, 173 P.3d at 729 (recognizing grounds for avoiding the law-of-the-case doctrine). Further, as this court found no error regarding the failure to object to penalty phase jury instructions, *see Nika III*, 124 Nev. at 1293-94, 198 P.3d at 854-56, those claims may not be cumulated. *See Reno*, 283 P.3d at 1224.

*Fundamental miscarriage of justice*

Nika contends that the failure to engage the consulate amounted to a fundamental miscarriage of justice because he is actually innocent of the death penalty. He asserts that the consulate would have assisted in presenting additional mitigation evidence. A fundamental miscarriage of justice requires "a colorable showing" that the petitioner is "actually innocent of the crime or is ineligible for the death penalty." *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. When claiming a fundamental miscarriage of justice based on ineligibility for the death penalty, the petitioner "must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found him death eligible." *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. Even assuming that new mitigation evidence previously omitted due to constitutional error could provide a basis for an actual innocence claim, *but see Sawyer v.*

*Whitley*, 505 U.S. 333, 345-47 (1992), we are not convinced that Nika demonstrated "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him death eligible," *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. Therefore, the district court did not err by dismissing this claim.

Having considered Nika's contentions and concluding that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

cc: Hon. Patrick Flanagan, District Judge
Federal Public Defender/Las Vegas
Attorney General/Carson City
Washoe County District Attorney
Freshfields Bruckhaus Deringer US LLP
Nathalie Huynh
Washoe District Court Clerk